# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CONSERVATORSHIP OF RHEA BRODY.

| | |
|---|---|
| MARY LYNEIS, as Conservator for RHEA BRODY, | FOR PUBLICATION<br>September 19, 2017<br>9:00 a.m. |
| Appellee, | |
| v | No. 332994<br>Oakland Probate Court |
| ROBERT D. BRODY, | LC No. 2015-367333-CA |
| Appellant, | |
| and | |
| JAY BRODY, | |
| Interested Party, | |
| and | |
| GERALD BRODY and CATHY B. DEUTCHMAN, | |
| Interested Parties-Appellees. | |

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

In this estate case involving Rhea Brody's personal assets, Rhea's husband, appellant Robert Brody, appeals as of right the probate court's order appointing Mary Lyneis as Rhea's conservator. Rhea's daughter, Cathy B. Deutchman, filed the petition for conservatorship, which was opposed by Robert and Jay Brody, the son of Robert and Rhea. We affirm.

-1-

## I.  APPOINTMENT OF A CONSERVATOR

Robert argues on appeal that the probate court abused its discretion by appointing a conservator to manage Rhea's estate and affairs under MCL 700.5401.  We disagree.

This Court reviews a probate court's appointment of a conservator for an abuse of discretion.  *In re Conservatorship of Shirley Bittner*, 312 Mich App 227, 235; 879 NW2d 269 (2015).  "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes."  *Id*.  This Court reviews the probate court's factual findings for clear error and its legal conclusions de novo.  *Id*. at 235-236.  "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding."  *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011) (quotation marks and citation omitted).  "The reviewing court will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court."  *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

Article V of the Estates and Protected Individuals Code (EPIC), MCL 700.5101 *et seq*., provides protection for individuals under disability.  The standards governing conservatorship appointments are described in MCL 700.5401, which, in relevant part, provides:

> (3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

These prerequisites must be established by clear and convincing evidence.  MCL 700.5406(7).  The clear-and-convincing-evidence standard is " 'the most demanding standard applied in civil cases . . . .' "  *Bittner*, 312 Mich App at 237, quoting *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).  Clear and convincing proof

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Martin*, 450 at 227 (quotation marks and citations omitted; alterations in original).]

Robert does not dispute that MCL 700.5401(3)(a) is satisfied, as Rhea's frontal temporal dementia renders her unable to manage her property or business affairs effectively. On appeal, Robert argues only that the probate court clearly erred in its conclusion that Rhea "has property that will be wasted or dissipated unless proper management is provided." We hold that the circuit court did not clearly err when it found that Rhea had property that would be wasted or dissipated without proper protection and oversight, or abuse its discretion when it appointed a conservator to oversee Rhea's estate.

The probate court thoughtfully considered Rhea's circumstances and the nature of each of the assets in Rhea's personal estate—comprising a Fifth Third bank account for tax refunds, an individually-held IRA, a jointly-held Chase Bank account, and jointly-owned homes in Michigan and Florida—before concluding that the requirements of MCL 700.5401(3) had been met by clear and convincing evidence. The Fifth Third bank account, containing only $580.60 at the time of the hearing, existed for depositing tax refunds. Lyneis testified that, as special conservator, she was responsible for reviewing Rhea's personal tax return and paying any tax liabilities, which included Rhea's potentially-substantial income from the Rhea Trust. Rhea risked negative tax consequences for failure to file her signed return and pay any liabilities. While the probate proceedings were ongoing, Jay completed Rhea's tax return but refused to provide it to Lyneis for review. Without the ability to review Rhea's tax return, Lyneis was unable to verify whether any refund was properly deposited into the Fifth Third account. Assets involving tax liabilities and refunds, including the Fifth Third account dealing with refunds, risked waste or dissipation without proper management.

The probate court noted that Rhea's IRA required an election of annual distributions. The probate court noted that with no one in place to authorize mandatory distributions, Rhea's IRA would be subject to tax penalties, which created a risk of waste and dissipation of the IRA funds. Robert argues that the probate court could not have found the IRA subject to waste or dissipation as a result of tax penalties because automatic distributions from the IRA had been set up to occur automatically for years, and Rhea's IRA requires "minimal involvement." Respondent fails to explain how the fact that an asset requires only minimal oversight renders the asset less likely to fall victim to waste or dissipation. Further, Robert's argument is not supported by the record. Although Lyneis testified that the annual distribution was deposited into the Rhea Trust for 2015, there was no evidence regarding annual distributions, automatic or otherwise, before 2015. Further, there is no evidence that appropriate distributions are guaranteed to occur absent intervention.

Rhea shares an interest in two homes, one in Michigan and one in Florida, with her husband Robert. The two also share a Chase Bank account, which is used to fund payments on the Florida home. The Brody family bookkeeper, Bonnie Dellinger, testified that she actively requested funds from Rhea's trust account to fund the Chase Bank account and satisfy mortgage payments on the Florida home. Because the Florida home is not regularly used, it is particularly susceptible to waste. Rhea herself is incapable of traveling to the Florida home. The probate court reasoned that, without management of mortgage payments or oversight of home maintenance, both the Michigan home and the Florida home risked waste or dissipation.

Robert suggests that it was improper for the probate court to consider joint assets when evaluating the risk of waste or dissipation because a conservator would be unable to change the

nature of jointly-owned property. Robert cites for authority our Supreme Court's 1988 opinion in *In re Wright Estate*, 430 Mich 463, 469-470; 424 NW2d 268 (1988), wherein the Court held that while "a conservator has the power to collect, hold, and retain assets of the estate, he may not change the nature of joint accounts created by the disabled adult before the adult was declared incompetent." (Quotation marks and citations omitted.) Robert misinterprets the Court's holding in that case. Although *Wright* precludes a conservator from changing the *nature* of joint accounts after the conservator's appointment, it does not limit a conservator's power to manage the accounts or preclude joint assets from being considered at the conservatorship hearing. See *id.* Under MCL 700.5419, "[a]ppointment of a conservator vests in the conservator title as trustee to *all* of the protected individual's property . . . held at the time of or acquired after the order." (Emphasis added.) The probate court did not err when it considered whether the jointly-held assets would be subject to waste or dissipation in satisfaction of MCL 700.5401(3)(b).[1]

Dellinger testified that she stopped managing payments for Rhea's expenses in January 2016, when Lyneis was appointed special conservator. Dellinger was concerned that without a conservator, Rhea's expenditures would not receive continued oversight. The probate court agreed, stating, "If no one is making decisions, it is a certainty, frankly, that property will be wasted or dissipated." Given these facts, the probate court did not clearly err in finding that, as a result of Rhea's inability to manage her property and business affairs, Rhea's property would be wasted without proper management.

Robert also argues that the probate court erred in appointing a conservator to act on behalf of Rhea because Robert, who held a durable power of attorney (DPOA) was already in a position to prevent waste and dissipation of Rhea's estate. At the very least, according to Robert, he should have been given priority over Lyneis as a potential conservator.

The existence of a DPOA does not prohibit the appointment of a conservator, and selection of an individual to be appointed as an incapacitated person's conservator is a matter committed largely to the discretion of the probate court. *In re Williams Estate*, 133 Mich App 1, 11; 349 NW2d 247 (1984). The statute governing appointment of a conservator, MCL 700.5409(1), allows a court to determine if the individuals who fall within the statutory priority guidelines are "suitable." Additionally, MCL 700.5409(2), grants the probate court authority to pass over "a person having priority and appoint a person having less priority or no priority" for the role of conservator if good cause exists. The statute's priority classifications are merely a guide for the probate court's exercise of discretion.

Under MCL 700.5409, a protected individual's spouse is entitled to consideration for appointment as conservator, and is granted priority over all other individuals except "[a] conservator, guardian of property, or similar fiduciary appointed or recognized by the

---

[1] The parties dispute whether the Fifth Third bank account was held by Rhea individually or held jointly by Rhea and Robert. In light of our determination that the probate court properly considered both Rhea's individually-held assets and her jointly-held assets, we conclude that the distinction is irrelevant.

appropriate court of another jurisdiction in which the protected individual resides," MCL 700.5409(1)(a), and "[a]n individual or corporation nominated by the protected individual if he or she is 14 years of age or older and of sufficient mental capacity to make an intelligent choice, including a nomination made in a durable power of attorney," MCL 700.5409(1)(b). As Rhea's husband, Robert was an individual entitled to priority consideration. However, Robert was not entitled to consideration unless the probate court considered an independent fiduciary and found him or her unsuitable. Lyneis, as trustee and independent fiduciary, had statutory priority over Robert, despite Robert's marriage to Rhea. MCL 700.5409(1).

Additionally, considering the evidence before it, the probate court found Robert unsuitable for the conservatorship. The probate court found that Robert had abdicated his responsibilities under the DPOA and failed to act on Rhea's behalf to protect her estate assets. The record supports the probate court's finding. Robert is over 91 years old and requires a caregiver. Testimony established that Robert, who relied on others to help with his own financial decisions, did not handle matters using the DPOA. According to Dellinger, Jay was acting on Robert's behalf to make decisions for the Rhea Trust. Witnesses also testified that Jay exhibited controlling behavior over Robert. Given these facts regarding the relationship between Jay and Robert, it was not unreasonable to infer that Jay would attempt to influence Robert's decision-making with respect to Rhea's estate in the future. The probate court did not abuse its discretion when it selected Lyneis, an independent fiduciary, over Robert as conservator.

Robert also argues that the probate court's appointment of a conservator was an abuse of discretion because there was no evidence that any asset of the estate had already been wasted or dissipated. However, the Legislature's use of the word "will" to modify "be wasted or dissipated unless proper management is provided" in MCL 700.5401(3)(b) supports the probate court's decision to focus on the likelihood that assets will be prospectively wasted or dissipated if a conservator is not appointed. See *In re DeCoste Estate*, 317 Mich App 339, 346; 894 NW2d 685 (2016) (explaining that the drafters of a statute are "assumed to have intended the effect of the language plain expressed," and this Court must give every word of the statute its plain and ordinary meaning). The probate court properly concluded that it was unnecessary to find any waste or dissipation had already occurred. Rhea's disability made her unable to manage her property and business affairs effectively. Although she had appointed Robert as her agent under the DPOA, he had abdicated these duties. Moreover, in addition to protecting against waste or dissipation of the assets currently in the estate, Lyneis testified that a conservator could protect the estate by interacting with the health insurance company, serving as the social security payee, and managing credit card bills and car lease payments. We are not left with a definite and firm conviction that the probate court erred in finding that a conservator was appropriate to fulfill these responsibilities.

We also reject Robert's argument that the probate court improperly shifted the burden of proof from Cathy to Robert when it asked Robert's attorney, "why do you care," and "you're the one objecting to it. I'm, I'm asking you for your reason for opposing [a] conservator. . . ." Robert takes the probate court's remarks out of context. The probate court's inquiry was in direct response to Robert's argument before the probate court. Robert claimed to oppose the appointment of a conservator because, when compared to the Rhea Trust, Rhea's personal estate was insignificant. The probate court merely asked Robert why he had bothered to oppose the petition if the assets were that insignificant. Later, the probate court judge stated, "These assets

regardless of how small people seem to view the estate, require, uh, decisions being made and there's a question, therefore, as to who has the legal authority to make decisions." The probate court demonstrated that it understood the proper burden of proof when it stated on the record that Robert and Jay had no obligation to testify or present a defense.

In sum, the probate court did not clearly err in finding that Rhea's property would be wasted or dissipated without proper management. Because there was clear and convincing evidence to support this conclusion, the probate court acted within its discretion in appointing a conservator under MCL 700.5401.

## II. COURT-APPOINTED GUARDIAN AD LITEM

Next, Robert argues that the court-appointed guardian ad litem (GAL), William J. Petersmark, failed to fulfill his statutory duties under MCL 700.5406(4).

Robert failed to challenge the GAL's performance in the probate court, and this issue is unpreserved. *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007). Although this Court may address an unpreserved issue if it involves a question of law and the necessary facts have been presented, *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006), we decline to fully address this issue because the record is simply undeveloped. Robert argues that the GAL failed to consider whether an alternative to conservatorship may be appropriate, but cites only the lack of explicit written consideration of the matter in Petersmark's report. Petersmark's failure to specifically note the full extent of consideration is not evidence that Petersmark failed to carry out his statutory obligation. Petersmark's report indicated that he complied with the duties of a GAL as required by statute and court rule, which would have included consideration of whether there was an alternative to conservatorship under MCL 700.5406(4)(a), and whether limiting the scope or duration of the conservator's authority under MCL 700.5406(4)(b) was appropriate before ultimately recommending a conservatorship without limitation. Petersmark was discharged before the conservatorship hearing, and did not testify regarding his thought processes or conclusions. On this record, we cannot conclude that Petersmark failed to perform his statutory duties.

## III. COURT-APPOINTED ATTORNEY

Robert also raises two complaints regarding the probate court's appointment of an attorney for Rhea, arguing that the probate court denied Rhea her right to retain an attorney of her choosing, and that appointed counsel failed to vigorously represent Rhea's interests at the conservatorship hearing. Even assuming that Robert has standing to challenge an alleged deprivation of Rhea's constitutional rights, Robert's claims fail because he has not demonstrated that Rhea possessed any such rights in the probate court. Robert asserts that there is a constitutional right to retained counsel under Const 1963, art 1, § 13, which states that "[a] suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney." However, Robert fails to explain how this constitutional provision guarantees any individual, especially a nonsuitor, the right to an attorney, or how the probate court's decision to appoint an attorney for Rhea violates this constitutional provision. Indeed, Robert concedes that the appointment was an exercise of the probate court's discretion. Further, although the right to the effective assistance of counsel applies in criminal prosecutions, Const

1963, art 1, § 20, child protection proceedings, MCR 3.915(B)(1), and paternity proceedings, *Haller v Haller*, 168 Mich App 198, 199; 423 NW2d 617 (1988), Robert makes no claim that there is a constitutional right to the effective assistance of counsel in probate.

Robert's argument is also inconsistent with the record. The probate court appointed an attorney out of concern that Rhea, who was mentally incapacitated, was unable to hire an attorney on her own behalf. The probate court stated that if Rhea hired counsel after the appointment, he would revisit his decision to appoint an attorney on her behalf. Robert argues that he could have hired an attorney for Rhea as her attorney-in-fact under the DPOA, but he never attempted to do so. Robert did not object to the performance of appointed counsel during the conservatorship hearing, and we note that appointed counsel actively engaged in the proceedings. Robert has not indicated what appointed counsel should have done differently. Because Robert has failed to support his arguments, his claim is abandoned. See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (explaining that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority," and "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.") (Citations omitted.)

## IV. TRUST EVIDENCE

Next, Robert argues that the probate court improperly admitted and relied on evidence from a concurrent proceeding in the probate court involving matters related to Rhea's trust assets to conclude that estate assets were at risk of waste or dissipation. However, " '[a] party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute.' " *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) (citation omitted). Not only did Robert fail to object to the inclusion of information about the trust proceedings at the conservatorship hearing, Robert incorporated trust evidence into his own strategy, repeatedly referring to the trust proceedings during cross-examination of witnesses and in closing argument. Robert's attorney specifically questioned Lyneis about the trust and her role as trustee, telling her, "I want to segregate these . . . I've got questions for you as the conservator, I've got questions for you as trustee." Robert waived any error related to the admission of evidence regarding the Rhea Trust when he intentionally contributed to the error at the hearing below. See *Genna v Jackson*, 286 Mich App 413, 422; 781 NW2d 124 (2009). However, we conclude that Robert's argument also fails on its merits.

Generally, all relevant evidence is admissible. MRE 402; *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008). "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003), citing MRE 401. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Tobin v Providence Hosp*, 244 Mich App 626, 637-638; 624 NW2d 548 (2001), citing MRE 403. When a trial court serves as the trier of fact in a case, it is presumed to consider evidence for its proper purpose. See *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992).

In the related trust case, the probate court found on the record that Jay was complicit in Robert's breaches of fiduciary duty and identified a "whole pattern of favoring Jay Brody at the expense of Cathy . . . ." However, at the conservatorship hearing, the probate court expressly refused to consider that complicity. The probate court stated that the evidence presented by the parties regarding Jay's manipulation of Robert was consistent with "what's been going on in the trust case. Jay Brody has a history of this behavior in the other case *but that's not evidence here*. Uh, but this is, this is quintessential Jay Brody, frankly." Moreover, as Robert acknowledges, when Cathy's questioning focused on the trustee's monthly expense payments for the trust, the probate court instructed her attorney, "Arguably, if you go far enough, it does have to do with the trust, but I would like to bring it back closer to, uh, you know, the handling of her personal estate." The probate court limited the testimony just as Robert argues on appeal it should have done, and Robert's arguments are unsupported by the record.

To the extent that the trust matter and the handling of Rhea's estate were inextricably linked, the probate court properly allowed the introduction of evidence related to the trust matter. Robert complains about the introduction of a letter Dellinger sent to the guardian ad litem for the trust, which detailed Jay's order for Dellinger to pay for Robert's past expenses from the Rhea Trust. Robert claims that the letter was irrelevant on a number of grounds. First, Robert claims that the letter was not material because it only involved funds in the trust. But the record demonstrated that income from the trust flows directly to Rhea's personal estate. The probate court could infer that, if Jay planned to invade the investment portfolio in the Rhea Trust to pay Robert's expenses, the personal income from that portfolio could be reduced and proper management was necessary under MCL 700.5401(3)(b). Second, Robert claims the letter was irrelevant because it involved Jay's statement, and Robert did not intend to act on the plans. But the record demonstrated throughout the proceedings that Jay attempted to exert control over Robert's decisions. The court could infer that Jay may have exerted control with respect to repayment of Robert's expenses as well.

Robert also complains that Cathy's attorney improperly injected considerations of the trust in arguments to the probate court. But it is well-settled that an attorney's statements and arguments are not evidence. See *Guerrero v Smith*, 280 Mich App 647, 658; 761 NW2d 723 (2008); *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Dorsey (On Remand)*, 273 Mich App 26, 45; 730 NW2d 17 (2006). The probate court appointed Lyneis to her separate roles as trustee and conservator, and was aware of the role she served in each capacity. Robert has not offered any argument to overcome the presumption that the court considered the evidence for its proper purpose.

## V. JUDICIAL BIAS

Robert also suggests that the probate judge harbored bias against Robert and Jay as a result of his knowledge of the trust case. Robert challenges the probate court's reliance on Dellinger's letter regarding Jay's plan to repay Robert for past expenses, as well as the court's reference to Jay's and Robert's decisions not to attend parts of the proceedings, and Jay's decision to withhold certain financial information from Lyneis.

Robert failed to state a claim for judicial bias in his statement of questions presented, and this argument may be considered waived. *River Investment Group, LLC v Casab*, 289 Mich App

353, 360; 797 NW2d 1 (2010) ("[t]his issue is waived because plaintiff failed to state it in the statement of questions presented in its brief on appeal."). Regardless, it is well established that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Cain v Mich Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996) (quotation marks and citation omitted). Here, the probate court was tasked with determining if Rhea's estate risked waste or dissipation. The probate court's reference to Dellinger's letter, which evidenced intent to invade trust property and might affect the income to Rhea's estate, did not demonstrate bias or antagonism. Further, the probate court did not demonstrate favoritism when it acknowledged the absence and lack of involvement by interested parties at various portions of the proceedings, especially when the probate court was required to consider those particular parties as candidates for the conservatorship appointment. The record simply does not support Robert's claim.

## V. LIMITED CONSERVATORSHIP OR PROTECTIVE ORDER

Finally, Robert argues that the probate court should not have ordered a full conservatorship, but should have entered a less restrictive order, such as a limited conservatorship or a protective arrangement. Again, we disagree.

The need for "assistance" in managing financial affairs does not necessarily demonstrate an inability to manage finances or a mishandling of finances, and a need for some "assistance" will not support the imposition of a full conservatorship where an individual remains capable of making responsible decisions. *Bittner*, 312 Mich App at 240-241. Therefore, when determining whether there is cause for a conservatorship, the probate court must endeavor to maintain an individual's autonomy by ordering the least restrictive means of protecting assets. *Id*. at 241- 242; see also MCL 700.5407(1) ("The court shall exercise the authority conferred in this part to encourage the development of maximum self-reliance and independence of a protected individual and shall make protective orders only to the extent necessitated by the protected individual's mental and adaptive limitations and other conditions warranting the procedure.").

Under MCL 700.5408(1), courts may impose limited protective arrangements in lieu of a full conservatorship. When considering whether a full conservatorship is appropriate,

> a probate court should approach the task from a perspective of respect for the individual's right to acquire, enjoy, and dispose of his or her property as the individual sees fit. Any restrictions on this fundamental right must be narrowly tailored to the individual's specific capabilities and incapacities, bearing in mind the heightened evidentiary threshold for judicial interference. [*Bittner*, 312 Mich App at 242.]

In *Bittner*, this Court ruled that the probate court erred by appointing a conservator when Bittner understood her sources of income and economic responsibilities, and her financial affairs were well managed because she had arranged for assistance from her daughter. *Id*. at 240-243. This Court explained that Bittner's "grant of a durable power of attorney to [her daughter]

confirms rather than negatives her ability to effectively manage her property and business affairs." *Id.* at 243.

Although Robert equates Rhea's situation to Bittner's, we believe the two cases are distinguishable. Unlike Rhea, Bittner suffered only math and memory difficulties that "plague many elderly (and not so elderly) individuals," and did not have a mental disability that made her unable to manage property or business affairs. *Id.* at 239. Moreover, because Bittner had never mismanaged or mishandled her affairs in the past, and she had appointed an agent under a DPOA, there was no clear and convincing evidence that the property would be wasted or dissipated without proper management. *Id.* at 240-241. In contrast, Rhea was not aware of the assets in her estate, let alone able to manage them. There is no evidence that Rhea continues to possess any ability to acquire, enjoy, and dispose of her property as she sees fit. Before she was struck with disability, Rhea appointed Robert as her agent via the DPOA. Although her act demonstrated some self-reliance and independence, her chosen method of oversight was rendered ineffective when Robert abdicated his duties.

The probate court specifically acknowledged that the least restrictive means of protecting Rhea's assets, aside from a conservatorship, would be the DPOA. However, facts in the record called into question Robert's ability to make decisions on Rhea's behalf, including Robert's abdication of such decisions in the past and the control Jay has exerted over Robert. Based on the testimony presented, the probate court opined that Jay was "overbearing, manipulative, abusive toward his father . . . and he was attempting to be the one in control." We defer to the probate court on matters of credibility, and give broad deference to its factual findings. *Erickson*, 202 Mich App at 331. We are not definitely and firmly convinced that the probate court made a mistake when it concluded that the DPOA was insufficient to protect Rhea's assets.

Robert does not adequately explain how Rhea would be able to maintain oversight of some, but not all, of her property under a limited conservatorship. Moreover, although Robert argues that a protective order may have been less invasive, Lyneis testified that she was not sure that some of the tasks needed by Rhea would be satisfactorily achieved with such an order. The probate court cited evidence that a DPOA or patient advocate form would be insufficient to manage responsibilities, such as dealing with Rhea's insurance companies. Given these facts, the probate court did not clearly err in finding that a conservatorship, as opposed to a limited conservatorship or a protective arrangement, was most appropriate for Rhea.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Christopher M. Murray