*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF KEITH NORBERT SCHROEDER.

---

JONATHAN SCHROEDER, on behalf of KEITH NORBERT SCHROEDER, a Protected Person,

        Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Respondent-Appellant.

FOR PUBLICATION
December 17, 2020
9:05 a.m.

No. 351011
Saginaw Probate Court
LC No. 19-139347-PO

---

*In re* ESTATE OF JAMES E. ALMY.

---

BARBARA J. ALMY,

        Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Respondent-Appellant.

No. 351012
Saginaw Probate Court
LC No. 19-139338-PO

---

Before: MARKEY, P.J., and METER and GADOLA, JJ.

PER CURIAM.

-1-

In these consolidated appeals, respondent Department of Health and Human Services (DHHS) appeals by right the probate court's protective orders issued under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* We reverse and remand in both cases.

## I. BRIEF BACKGROUNDS

In Docket No. 351011, Keith Norbert Schroeder, a protected person, was in a rehabilitation and recovery hospital, and his wife, Hedy Pauline Schroeder, was residing in the couple's home when petitioner Jonathan Schroeder, one of their children, petitioned the probate court for a protective order. Petitioner son alleged that a protective order was needed because his father, Mr. Schroeder, was unable to effectively manage his property and business affairs due to physical disability and was likely to become a permanent resident in a long-term care facility. Subsequently, over the DHHS's protests, the probate court granted the petition, finding satisfaction of the relevant criteria in EPIC. The court issued a protective order that transferred Mr. Schroeder's individual and joint interests in assets to Mrs. Schroeder, required Mr. Schroeder to make support payments to his wife from a portion of his income stream, and terminated Mr. Schroeder's spousal rights in regard to any potential future inheritance. The DHHS appeals.

In Docket No. 351012, James E. Almy was in a rehabilitation center and his wife Barbara J. Almy was residing in the couple's home when Mrs. Almy petitioned the probate court for a protective order. Mrs. Almy alleged that a protective order was needed because Mr. Almy was unable to effectively manage his property and business affairs due to physical illness and was likely to become a permanent resident in a long-term care facility. Later, over the DHHS's objections, the probate court granted the petition, finding satisfaction of the pertinent criteria in EPIC.[1] The court issued a protective order that transferred Mr. Almy's individual and joint interests in assets to Mrs. Almy, required Mr. Almy to make support payments to his wife from a portion of his income stream, and terminated Mr. Almy's spousal rights with respect to any potential future inheritance. The DHHS appeals.

In both cases, the petitions for protective orders were filed before Medicaid applications were submitted by or on behalf of Mr. Schroeder and Mr. Almy to cover the costs of long-term care facilities. And the probate court issued its protective orders either before Medicaid applications were pursued or before Medicaid eligibility determinations were made. This panel entered a sua sponte order consolidating the two appeals "to advance the efficient administration of the appellate process." *In re Keith Norbert Schroeder; In re James E Almy*, unpublished order of the Court of Appeals, entered October 16, 2020 (Docket Nos. 351011 and 351012). Details regarding both cases will be discussed in the analysis section of this opinion.

## II. LEGAL FRAMEWORK

### A. STANDARDS OF REVIEW AND STATUTORY CONSTRUCTION

---

[1] The same probate court judge issued both protective orders.

"Questions of statutory interpretation are . . . reviewed de novo." *In re Estate of Vansach*, 324 Mich App 371, 385; 922 NW2d 136 (2018). The *Vansach* panel further observed:

> In comparison, appeals from a probate court decision are on the record, not de novo. We review a trial court's factual findings for clear error, while its dispositional rulings, including a decision to enter a protective order, are reviewed for an abuse of discretion. A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding. An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. A trial court may also abuse its discretion by failing to operate within the correct legal framework. [*Id.* (quotation marks and citations omitted).]

Our role in construing statutory language is to discern the Legislature's intent, which may reasonably be inferred from the statute's words. *Sanford v Michigan*, __ Mich __, __; __ NW2d __ (2020); slip op at 3. This Court's analysis must focus on the express language of the statute because it offers the most reliable evidence of legislative intent. *Id.* at __; slip op at 3-4. "When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written." *Id.* at __; slip op at 4.

## B. MCL 700.5401, ASSOCIATED STATUTES, AND EVIDENTIARY BURDEN

The crux of these consolidated appeals concerns the requirements of MCL 700.5401, which provides, in pertinent, as follows:

> (1) Upon petition and after notice and hearing in accordance with this part, the court may appoint a conservator or make another protective order for cause as provided in this section.
>
> * * *
>
> (3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:
>
> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.
>
> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support,

-3-

care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.[2]

"After hearing, upon finding that a basis for a conservator's appointment or another protective order is established by *clear and convincing evidence*, the court shall make the appointment or other appropriate protective order." MCL 700.5406(7) (emphasis added). The most demanding standard in civil cases is the clear-and-convincing-evidence standard. *In re Conservatorship of Brody*, 321 Mich App 332, 337; 909 NW2d 849 (2017). Evidence is clear and convincing when it produces a firm belief in the truth of the allegations that a party is attempting to establish. *Id.* The standard has also been described as equating to evidence that is so clear, direct, weighty, and convincing as to enable a factfinder, absent any hesitancy, to come to a definitive conclusion regarding the truth of the precise facts at issue. *Id.*

With respect to the types of financial and property transactions that a probate court is authorized to mandate as part of a protective order issued under MCL 700.5401, MCL 700.5408(1) provides:

> If it is established in a proper proceeding that a basis exists as described in section 5401 for affecting an individual's property and business affairs, the court, without appointing a conservator, may authorize, direct, or ratify a transaction necessary or desirable to achieve a security, service, or care arrangement meeting the protected individual's foreseeable needs. Protective arrangements include, but are not limited to, payment, delivery, deposit, or retention of money or property; sale, mortgage, lease, or other transfer of property; entry into an annuity contract, contract for life care, deposit contract, or contract for training and education; or an addition to or establishment of a suitable trust.

Additionally, MCL 700.5407(2) and (3) list specific powers that a probate court can exercise with respect to a protected individual's estate and business affairs.

## C. MEDICAID OVERVIEW

Mr. Schroeder and Mr. Almy allegedly faced the likely prospect of residing permanently in long-term care facilities when the petitions were filed, and the nursing home aspect of the cases implicated issues about the cost of care, Medicaid, and patient-pay obligations under Medicaid rules. All of these issues affected the probate court's analysis of MCL 700.5401 and its rulings. In *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245-247; 931 NW2d 571 (2019), our Supreme Court recently summarized the general workings of Medicaid, explaining:

---

[2] We note that MCL 700.5407(1) states, in part, that "[t]he court shall exercise the authority conferred in this part to encourage the development of maximum self-reliance and independence of a protected individual and shall make protective orders only to the extent necessitated by the protected individual's mental and adaptive limitations and other conditions warranting the procedure."

The Medicaid program is governed by a complex web of interlocking statutes, as well as regulations and interpretive documents published by state and federal agencies. The program was created by Title XIX of the Social Security Act of 1965, PL 89-97; 79 Stat 343, codified at 42 USC 1396 *et seq*. Medicaid is generally a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states. At the federal level, the program is administered by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services (CMS). The State Medicaid Manual is published by CMS to help guide states in their administration of the program, including how to determine an applicant's eligibility for benefits. Each participating State develops a plan containing reasonable standards for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and Secretary of Health and Human Services. In formulating those standards, States must provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant.

Medicaid benefits are provided automatically for the "categorically needy," . . . . Congress has also enacted an optional program, in which states may elect to participate, for those who are deemed "medically needy." [M]edically needy individuals . . . become eligible for Medicaid benefits only when their incomes and assets are reduced below certain established levels. Michigan has elected to include this optional coverage for the medically needy in its state Medicaid plan. Therefore, Michigan must comply with the requirements imposed by the federal Medicaid statutes. Plaintiffs here fall within the medically needy category for those over the age of 65. Therefore, to be eligible for Medicaid benefits, they were required to reduce their countable incomes and assets to or below $2,000. [Citations, quotation marks, and ellipses omitted.]

D. THIS COURT'S OPINION IN *VANSACH*

In consolidated appeals in *Vansach*, protective orders were entered by probate courts under EPIC that required all of the income of individuals institutionalized in nursing homes and receiving Medicaid benefits to be paid to their spouses who remained in the community. *Vansach*, 324 Mich App at 376. The DHHS appealed the protective orders. *Id.* The *Vansach* panel ruled as follows:

In sum, probate courts have authority to enter orders requiring an institutionalized spouse to provide support for a community spouse. However, EPIC does not give probate courts unfettered discretion to enter an order allowing the community spouse to maintain his or her current lifestyle without regard to the institutionalized spouse's needs and patient-pay obligations. In the cases before us, rather than consider the couples' needs and circumstances as they existed in light of Medicaid, the probate courts disregarded the patient-pay amounts and impoverished the institutionalized spouses so that the community spouses could maintain their standards of living. By failing to properly consider the implications

of Medicaid in relation to the spouses' respective needs and circumstances, the probate courts operated under the wrong legal framework and abused their discretion. [*Id.* at 401-402.]

Specific aspects of *Vansach* will be discussed below when relevant to the issues posed in the instant appeals.

## III.  ANALYSIS

### A.  MCL 700.5401(3)(a) – CAPACITY TO MANAGE PROPERTY AND BUSINESS AFFAIRS EFFECTIVELY

In Docket No. 351011, the DHHS argues that petitioner son failed to demonstrate by clear and convincing evidence that Mr. Schroeder was unable to effectively manage his property and business affairs due to physical injury or illness, which, under MCL 700.5401(3)(a), must be established to obtain a protective order.  In Docket No. 351012, the DHHS argues, in relationship to MCL 700.5401(3)(a), that there was a lack of clear and convincing evidence showing that Mr. Almy was unable to effectively participate in the management of his own property and income.

### 1.  MR. SCHROEDER

Petitioner son was required to prove by clear and convincing evidence that Mr. Schroeder was unable to manage his property and business affairs effectively for reasons such as physical illness or disability.  MCL 700.5401(3)(a); MCL 700.5406(7).  Mr. Schroeder's son alleged in his petition that his father had suffered a spinal cord injury and was unable to take care of himself.  He further asserted that Mr. Schroeder was unable to effectively manage his property and business affairs because of the spinal cord injury.  Mr. Schroeder's court-appointed guardian ad litem (GAL) reported that "[d]ue to his physical disabilities, it is unlikely that Mr. Schroeder will be returning home."  The GAL explained that she visited the Schroeders in Mr. Schroeder's room at the hospital, that she confirmed the assets listed in the petition, which Mr. Schroeder believed to be accurate, and that Mr. Schroeder indicated that he was aware of the petition and did not object to the request for a protective order.  The GAL concluded that Mr. Schroeder was in need of a protective order because, in part, he could not "make informed decisions."  The DHHS did not present any evidence to counter the GAL's opinion.

Moreover, at the hearing on the petition for a protective order, counsel for petitioner son stated that there was a report in the file from Mr. Schroeder's "physician regarding [his] diagnosis of a spinal cord injury."  And during its ruling from the bench, the probate court indicated that it had "reviewed the medical reports sent in by Dr. Khan and the GAL."  There are no medical reports in the record presented to us on appeal, and the DHHS has not produced copies of any medical reports or attempted to have those reports added to our record.  Consequently, we cannot conclude, as the DHHS urges, that the medical reports were insufficient to satisfy MCL 700.5401(3)(a).  We also note that the DHHS, in its response to the petition for a protective order, did not directly challenge the claim that Mr. Schroeder was unable to effectively manage his property and business affairs due to the spinal cord injury.  Not until its motion for reconsideration did the DHHS specifically challenge establishment of MCL 700.5401(3)(a).  And where an issue is first raised in a motion for reconsideration, it is not properly preserved.  See *Pioneer State Mut Ins Co v*

*Michalek*, 330 Mich App 138, 150; 946 NW2d 812 (2019). Absent the medical reports the probate court referenced, we are unable to conclude whether clear and convincing evidence existed to establish that Mr. Schroeder was unable to manage his property and business affairs due to a spinal cord injury. The allegations in the petition are not evidence, and the assertions of the GAL, who is not a medical professional, would not appear to constitute clear and convincing evidence. Indeed, the GAL offered somewhat conflicting evidence when she informed the probate court that Mr. Schroeder had been able to confirm the list of assets in the petition and did not object to the request for a protective order. We direct the probate court to revisit this finding on remand, bearing in mind that it is the petitioner's burden to support the need for a protective order by clear and convincing evidence.

## 2. MR. ALMY

In Mrs. Almy's petition, she alleged that her husband was diagnosed with dementia, Parkinson's disease, impaired mobility, and short-term memory impairment and that his medical diagnosis rendered him unable to effectively manage his property and business affairs. Mr. Almy's court-appointed GAL opined, following an investigation, that Mr. Almy was unable to make informed decisions and required a protective order. A physician's report filed in the matter supported the GAL's conclusion. The DHHS did not challenge or refute any of this information. In light of the fact that the medical report and the GAL's assessment were unchallenged and indicated that Mr. Almy was unable to effectively handle his financial affairs due to his health issues, we hold that the probate court did not clearly err in determining that MCL 700.5401(3)(a) was satisfied in regard to Mr. Almy.

## B. MCL 700.5401(3)(b) – WASTE OR DISSIPATION OF PROPERTY ABSENT PROPER MANAGEMENT AND MONEY NEEDED FOR SUPPORT, CARE, AND WELFARE

As quoted earlier, MCL 700.5401(3)(b) requires a petitioner to show that the debilitated "individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money." The DHHS contends that the petitioners in both cases failed to demonstrate by clear and convincing evidence that Mrs. Schroeder and Mrs. Almy actually needed their husbands' interests in assets and the allocated portions of their income. According to the DHHS, Mr. Schroeder and Mr. Almy were in need of their assets and income to cover the costs of their own care. The DHHS argues that the probate court improperly provided Mrs. Schroeder and Mrs. Almy with assets and income so that they could maintain their current lifestyles without regard to their husbands' needs and obligations relative to long-term care and its costs. The DHHS asserts that instead of viewing Mr. Schroeder's and Mr. Almy's needs in terms of their being responsible for their long-term care and costs, the probate court effectively looked to taxpayers to fund their care through a governmental program— Medicaid—that is intended for the needy, not for persons with assets and income that they can use to pay for their own care.

With respect to Mr. Schroeder, the probate court ordered that his interests in assets that he owned individually and jointly with Mrs. Schroeder were to be transferred to Mrs. Schroeder for his wife's care and support. These assets were valued at $450,000. In regard to Mr. Schroeder's income, which consisted of monthly pension and social security benefits totaling approximately

$1,387, the probate court ordered the payment of monthly support from those funds to Mrs. Schroeder in the amount of $600, leaving $787 to be applied to Mr. Schroeder's prospective patient-pay amount at a long-term care facility. In support of its ruling, the probate court explained that Mr. Schroeder had property that would be wasted or dissipated unless proper management was provided and that Mrs. Schroeder was in need of money for her support, care, and welfare. The probate court stated that it had considered both spouses' needs and had examined Mrs. Schroeder's monthly budget that showed expenses of $4,455.[3] The probate court further ruled:

> The Court also has determined the award will not impoverish the institutional spouse or the community spouse and a patient amount is appropriate in this case to insure the institutional spouse has money to pay for part or all of his care. The award to the community spouse hopefully is enough to have an appropriate standard of living that does not run out so the community spouse can remain in the community and also not be required to be on state assistance.

With respect to Mr. Almy, the probate court ordered that his interests in assets that he owned individually and jointly with Mrs. Almy were to be transferred to his wife for her care and support. These assets were valued at $500,000. In regard to Mr. Almy's income, which was approximately $2,421 a month, the probate court ordered the payment of monthly support from those funds to Mrs. Almy in the amount of $421, leaving $2,000 for Mr. Almy's monthly care, which was considerably more than his estimated monthly patient-pay amount of $800 for care at a long-term care facility. The probate court stated that it had considered both spouses' needs, contemplating Mrs. Almy's monthly budget that showed expenses of $3,274 and allowing Mr. Almy to retain sufficient funds to avoid impoverishment.[4] In support of its ruling, the probate court posited that Mr. Almy had property that would be wasted or dissipated unless proper management was provided and that Mrs. Almy was in need of money for her support, care, and welfare.

We find problematic the probate court's consideration of Medicaid and patient-pay amounts in assessing need when no Medicaid eligibility and patient-pay determinations had been made at the time of the court's rulings. In *Vansach*, 324 Mich App at 394 n 14, this Court observed:

> We emphasize that the petitions in this case were made after the initial Medicaid determinations had been made and the petitions were premised on the assertion that additional income was needed to "support" [the spouses], presumably because [42 USC] 1396r-5(d)(5) recognizes court orders "for the support of the community spouse." Thus, our analysis is focused on the issuance of orders for support under EPIC after an initial Medicaid eligibility determination has been made; we are not concerned with gift-giving beyond what is needed for support, or other attempts to use protective proceedings, *before* the initial Medicaid determination for Medicaid-planning purposes.

---

[3] Mrs. Schroeder had her own monthly income of $1,453.

[4] Mrs. Almy had her own monthly income of $1,772.

We understand and appreciate that patient-pay amounts can be estimated before the submission of a Medicaid application and a Medicaid eligibility determination. But in assessing the "need" for money for a person's support and care under MCL 700.5401(3)(b) on the basis of Medicaid-related circumstances, there must actually be Medicaid determinations regarding eligibility and patient-pay amounts. Indeed, the *Vansach* panel stated that "[i]n cases in which an institutionalized spouse is receiving Medicaid benefits, weighing both spouses' needs and circumstances requires consideration of those needs and circumstances as they actually exist under Medicaid." *Vansach*, 324 Mich App at 396. The probate court here, however, considered needs in the context of Medicaid-related circumstances even though Mr. Schroeder and Mr. Almy were not receiving Medicaid benefits and were awaiting Medicaid eligibility determinations. A nursing home resident who does not qualify for Medicaid coverage will certainly owe considerably more money to the nursing home than a patient-pay amount in a Medicaid setting. The idiom putting the cart before the horse is aptly applicable to the probate court's analysis. Therefore, reversal is necessary. Circumstances have likely evolved during the pendency of this appeal regarding care and Medicaid coverage. Consequently, on remand and assuming petitioners wish to continue, the probate court shall consider the circumstances as they actually exist.

Finally, we address the DHHS's argument posed in both cases that the probate court only had authority over the estate and assets of the protected individuals, Mr. Schroeder and Mr. Almy, not their spouses, with respect to ordering the transfer of assets. The DHHS contends that in setting the amount or value of transferred assets, a probate court must accurately determine whether the protected individual actually possesses that amount to transfer. The DHHS states in its Almy brief that "[w]hen a probate court order inflates the amount that the protected individual is transferring to an amount that is more than he owns, it will be in conflict with the amounts reported and verified in the filed Medicaid application," and if "the application amounts and the court order cannot be reconciled it creates a conflict in making a Medicaid determination."[5]

The probate court ordered Mr. Schroeder and Mr. Almy to transfer their interests in assets owned individually or jointly with their spouses. With respect to Mr. Schroeder, the probate court valued the asset transfer at $450,000. In the petition, Mr. Schroeder's son claimed that there was $203,400 in real property and $737,000 in personal property for a grand total of $940,000 in assets. With respect to Mr. Almy, the probate court valued the asset transfer at $500,000. In the petition, Mrs. Almy claimed that there was $275,400 in real property and $718,000 in personal property for a grand total of $993,400 in assets. The DHHS did not truly assail the values offered below or offer evidence to the contrary; the issue has essentially been developed on appeal. That said, there was little to no supporting evidence regarding or identifying specific asset interests and values— just conclusory assertions. We hold that when a probate court acts to transfer property upon satisfaction of the prerequisites in MCL 700.5401 relative to need, it is imperative for the court to identify the interests being transferred and the value of those interests. Although there is no specific language in EPIC demanding such information, when a court is examining the financial needs of spouses and orders asset transfers on the basis of those needs, a valuation of the assets or interests therein is an inescapable and necessary component of the analysis. To the extent that

_____

[5] The DHHS argues that claiming an "inflated" value is made in protective proceedings on purpose because it will result in a higher Medicaid community spouse resource allowance.

-9-

asset transfers are again considered on remand, the probate court shall require evidence concerning the nature of the interest held in a particular asset and the value of the interest in the assets.

We reverse the protective orders issued in these cases and remand for proceedings consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Michael F. Gadola