*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NBJ.

KARI MASON,

               Petitioner-Appellee,

v

NBJ,

               Respondent-Appellant.

UNPUBLISHED
March 25, 2025
12:06 PM

No. 371346
Kent Probate Court
LC No. 99-910630-MI

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the probate court's order denying his petition for discharge from involuntary mental health treatment. We affirm.

## I. FACTUAL BACKGROUND

Respondent has a lengthy history of mental illness and assaultive behaviors dating back to the 1970s. Respondent's history of involuntary mental health treatment first began in 1999, when a social worker filed a petition for hospitalization following respondent's completion of a 15 ½ year prison sentence for various assaultive crimes. The social worker stated that the petition was filed because respondent was exhibiting symptoms of paranoia and delusions consistent with schizophrenia. Respondent believed that birds were talking to him, that he was being poisoned by staff, and that he was being controlled and tracked by an implant in his arm. The probate court granted the petition and ordered respondent to participate in involuntary mental health treatment.

After this initial petition, respondent was involuntarily hospitalized seven more times before a major incident occurred in 2003, in which he chased and stabbed a community mental health employee who came to visit him at his apartment. After the incident, respondent stated that he heard voices telling him to stab her. Respondent was charged with assault with intent to commit murder, MCL 750.83, but was adjudicated not guilty by reason of insanity (NGRI). In the ensuing years, over 20 petitions and corresponding orders for continued involuntary mental health treatment have been filed, and respondent has effectively remained in inpatient care for most of his life. Throughout his time in inpatient care, respondent has consistently struggled with

-1-

delusions, paranoia, hallucinations, and isolative behaviors that mental health professionals have classified as consistent with schizoaffective disorder. He has also continued to exhibit aggressive, threatening, and inappropriate behaviors toward staff and other patients. Respondent additionally suffers from unrelated medical conditions, which impact his thyroid and cardiovascular system.

In May 2024, respondent petitioned for discharge from the most recent order continuing involuntary mental health treatment. Per statutory requirements, the probate court received a six-month review report from a psychiatrist and a report on alternatives for mental health treatment. At a hearing on the petition, the probate court heard testimony from psychologist Dr. Daniel Blake, who confirmed that respondent has been diagnosed with schizoaffective disorder and continues to meet the criteria for involuntary mental health treatment under MCL 330.1401(1). Dr. Blake's basis for his diagnosis and conclusion were as follows:

> [Respondent]'s got significant thought disorganization. He's got a history of receiving, thinking messages were being sent to him from the TV and radio. He's got a long history of instability. He's—he's had multiple—involvements with the law, multiple assaults. And he's also had a long psychiatric history. And by the way he is a—this is a petition for discharge, and he is an NGRI patient, a not guilty by reason of insanity. And the charges for which he was adjudicated . . . actually just one charge, [was] assault with intent to murder.

Dr. Blake also noted that respondent denied having physical issues with his thyroid and heart. After reviewing respondent's medical record, speaking with staff who care for him, and meeting with respondent, Dr. Blake ultimately concluded that respondent's physical issues, pervasive mental illness symptoms, and history of "at least three, four or five entanglements with the law for assaults" indicated that respondent was not able to independently function in society.

After hearing this testimony, the probate court made the following findings:

> Okay. Well, I'm satisfied that [respondent] is an individual who continues to need treatment due to the mental illness, schizoaffective disorder. And it does appear that he still needs the treatment, which may be in a less restrictive setting. Once a—another placement is secured. So, I'm satisfied by clear and convincing evidence that the order is necessary, and it may cover the supervised living arrangements that will be secured for him. So, I am ordering that Walter Reuther Psychiatric Hospital can provide treatment that is adequate and appropriate to his condition. And he may be stepped down to a less restrictive setting when deemed appropriate and a placement is secured. So, the current order will continue.

Following the hearing, the trial court entered an order continuing defendant's commitment for involuntary mental health treatment. This appeal followed.

## II. ANALYSIS

Respondent argues that the probate court abused its discretion by continuing the order for involuntary mental health treatment. We disagree.

-2-

We review "for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "The probate court necessarily abuses its discretion when it makes an error of law." *Id*. (quotation marks and citation omitted). Additionally, "[a] probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted). A factual finding by a probate court "is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). "This Court reviews de novo a matter of statutory interpretation." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019).

Respondent contends that clear and convincing evidence did not support the probate court's decision to continue the order requiring him to engage in involuntary mental health treatment. He reasons that the court did not adequately determine that he is a "person requiring treatment." According to the Mental Health Code, a "person requiring treatment" is defined as:

(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others. [MCL 330.1401(1).]

To satisfy the requirements under MCL 330.1401, an individual must have a mental illness, defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).[1]

---

[1] The statutory phrase "person requiring treatment" in MCL 330.1472a(4) regarding the issuance of a continuation order is subject to the definition provided in MCL 330.1401(1); therefore, the

All requirements under MCL 330.1401 must be proven by clear and convincing evidence. See MCL 330.1465. "The clear-and-convincing-evidence standard is the most demanding standard applied in civil cases . . . ." *In re Conservatorship of Brody*, 321 Mich App 332, 337; 909 NW2d 849 (2017) (quotation marks and citation omitted). Clear and convincing evidence

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citations omitted; alterations in original).]

Individuals subjected to treatment orders of 365 days, as is the case here, are entitled to certain rights, including "the right to adequate and prompt review of his or her current status as a person requiring treatment." MCL 330.482. After the review is complete, the results are added to the individual's record in the form of a written report. MCL 330.1483(1). The individual is entitled to notice of the report and of the right to petition for discharge. MCL 330.1483(1). If the individual objects to the conclusion that they need continuing involuntary mental health treatment, then they "ha[ve] the right to a hearing and may petition the court for discharge of the individual from the treatment program." MCL 330.1484. Next,

> (1) Upon a hearing under section 484, if the court finds that an individual under an order of involuntary mental health treatment is no longer a person requiring treatment, the court shall enter a finding to that effect and shall order that the individual be discharged.

> (2) Upon a hearing under section 484, if the court finds that an individual under a 1-year order of involuntary mental health treatment continues to be a person requiring treatment, . . . the court shall do 1 of the following:

> (a) Continue the order.

> (b) Issue a new continuing order for involuntary mental health treatment under section 472a(3) or (4). [MCL 330.1485a.]

Here, respondent points out that the probate court's order did not specify the particular provisions under which it found that respondent continued to require treatment under MCL 330.1401(1). However, the underlying one-year continuing order selected all three provisions as grounds for the probate court's findings and order. Only one basis is necessary, but we conclude that there was clear and convincing evidence to support the trial court's findings under all three provisions.

_____

same phrase in MCL 330.1485a(2) is necessarily consistent with the definition in MCL 330.1401(1).

First, regarding MCL 330.1401(a), the probate court heard testimony from expert Dr. Blake, who reviewed respondent's medical record and spoke with staff who cared for him at the psychiatric hospital. Dr. Blake was familiar with respondent's assaultive history, which indicated a likelihood to seriously physically injure himself or another. Dr. Blake affirmed directly that "as a result of his mental illness, [respondent would] basically injure himself, or another person either intentionally or unintentionally still." Given Dr. Blake's familiarity with respondent, respondent's medical records, and his assaultive history therein, we see no cause to disturb the probate court's findings based on Dr. Blake's testimony. See *In re Portus*, 325 Mich App at 397 (quotation marks and citation omitted) ("[W]e defer to the probate court on matters of credibility . . . because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court").

The probate court record also contains a six-month review report from psychiatrist Deolixto Pascual, M.D., pursuant to MCL 330.1483, as well as a report on alternative mental health treatment from Alison Mace, a licensed master social worker (LMSW). In his report, Dr. Pascual concluded that respondent continued to require treatment as a person defined in MCL 330.1401(1). The rationale for this conclusion was based partially on the fact that respondent had violent assault in his criminal history and continued to exhibit aggressive and inappropriate behaviors. Mace likewise observed that respondent's understanding of his past behaviors and crimes was minimal. Ultimately, respondent's recent aggressive behaviors, combined with his history of assault—both criminal and noncriminal—give rise to a reasonable expectation of harm under MCL 330.1401(1)(a). See *In re Tchakarova*, 328 Mich App at 183-184 (noting that the respondent's pattern of reckless behavior "gave rise to a reasonable expectation of intentional or unintentional serious physical injury to respondent or another individual in the near future"). Accordingly, the evidence clearly and convincingly supported a finding that respondent continued to qualify as a person requiring mental health treatment under MCL 330.1401(1)(a).

Next, regarding MCL 330.1401(1)(b), Dr. Blake affirmed that respondent's mental illness would prevent him from caring for his own basic physical needs. Dr. Blake noted that respondent's severe psychological issues were accompanied by physical conditions with his thyroid and heart, but that respondent denied having such issues. Dr. Pascual expressed the same concerns in his review report, noting that respondent denied having thyroid and cardiovascular problems and that he was not consistently compliant with taking prescribed medications. This, Dr. Pascual stated, was direct evidence under MCL 330.1401(1)(b) that respondent's mental illness prevented him from being able to attend to his basic needs. Mace also did not recommend discharge for similar reasons, noting that

> [respondent] continues to present with pervasive symptoms of mental illness. He requires consistent prompting and coaching to engage appropriately with other and take care of himself. He has not demonstrated notable independent living skills, making discharge planning difficult . . . . He remains a person in need of mental health treatment at this time.

Therefore, the evidence clearly and convincingly supported a finding that respondent continued to qualify as a person requiring mental health treatment under MCL 330.1401(1)(b).

Finally, regarding MCL 330.1401(1)(c), Dr. Pascual noted that respondent's denial of his physical conditions and mental illness indicated a substantial risk of significant harm from impaired judgment. Dr. Pascual's conclusions were based in part on persistent delusions that respondent experienced, including that he had a tracker in his arm and that he had "special white [blood] cells" that gave him immunity from disease. Dr. Blake additionally testified that respondent had "significant thought disorganization" and a history of delusions like "thinking messages were being sent to him from the TV and radio." Dr. Blake again affirmed directly that respondent's mental illness impaired his judgment such "that he is unable to understand the need for treatment." Testimony from a psychiatrist, particularly testimony indicating that an individual with a history of delusions continues to deny having illnesses, can support a finding that the individual's impaired judgment presents a substantial risk of significant harm. See *id*. at 185-186. Therefore, the evidence clearly and convincingly supported a finding that respondent continued to qualify as a person requiring mental health treatment under MCL 330.1401(1)(c).

## III. CONCLUSION

Ultimately, the testifying expert, Dr. Blake, and the two authorized reporters, Dr. Pascual and Mace, all plainly provided evidence that respondent is a person suffering from mental illness and in need of mental health treatment. As earlier noted, we give "great deference" to the probate court's credibility findings. *In re Portus*, 325 Mich App at 397. Here, we find no clear error in the court's factual findings and no abuse of discretion in its decision to continue the order for involuntary mental health treatment.[2]

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

---

[2] Respondent argues in his reply brief that the court's reference to his NGRI charge was inadmissible hearsay. " '[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal.' " *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (citation omitted; alteration in original). Rather, an appellant's reply brief must be "confined to rebuttal of the arguments in the appellee's or cross-appellee's brief." MCR 7.212(G); see also *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443-444; 906 NW2d 482 (2017). The appellee's brief in this matter raised no evidentiary issues, either pertaining to inadmissible hearsay or otherwise. We thus decline to address the merits of this additional argument.