*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KKW.

MELISSA KIEL,

Petitioner-Appellee,

v

KKW,

Respondent-Appellant.

UNPUBLISHED
December 16, 2025
10:42 AM

No. 374499
Genesee Probate Court
LC No. 2021-218228-MI

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Respondent appeals as of right the continuing order for her mental health treatment, which required respondent to undergo assisted outpatient treatment (AOT) pursuant to the Mental Health Code, MCL 330.1001 *et seq*. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent has a history of involuntary mental health treatment for schizophrenia and bipolar disorder dating back to 2021. Relevant to this appeal, in mid-2024, the probate court entered an initial order for involuntary mental health treatment in the form of hospitalization and AOT. Respondent did not comply fully with her mental health treatment, leading to two separate orders to take her into custody for treatment. A second petition for involuntary mental health treatment was filed in the fall of 2024. After a hearing, the probate court found that respondent was a person requiring treatment and ordered combined hospitalization and AOT for up to 90 days.

This appeal relates to a January 21, 2025 petition for continuing mental health treatment, which was filed because of the impending expiration of the second order for involuntary mental health treatment. Petitioner, Melissa Kiel, who is a representative of Genesee Health System (GHS), stated in the petition that respondent was residing at the Shelter of Flint (emergency housing). Kiel contended that respondent continued to be a person requiring treatment. Kiel

-1-

explained: "[Respondent] lacks insight into her mental health and struggle[s] with maintaining compliance with treatment and medication. She has a history of non-compliance, multiple hospitalizations, arrests/jail[,] and chronic homelessness." Kiel requested a combination of hospitalization and AOT for a period of not more than one year.

On January 17, 2025, psychiatrist Dr. Mark Kanzawa, D.O., examined respondent for approximately 12 minutes in connection with the petition for continued mental health treatment. He also reviewed respondent's mental health records and consulted with her treatment providers. In his corresponding clinical certificate, Dr. Kanzawa opined that respondent continued to be a person requiring treatment and recommended a combination of hospitalization and AOT. A report on alternative mental health treatment was prepared, which also recommended a combination of hospitalization and AOT.

During the January 30, 2025 hearing on the petition, Dr. Kanzawa and respondent both testified. Dr. Kanzawa's testimony included a discussion of respondent's prior mental health challenges, in addition to updated details about her living situation and medication noncompliance from January 2025. Dr. Kanzawa's assessment was based largely on respondent's mental health records, with limited commentary of the information obtained during her interview.

Respondent testified at the hearing that she recently located an apartment and received Social Security income allowing her to afford rent. Although respondent acknowledged she was not compliant with her prior medication, she contended that she complained about uncomfortable side effects and was prescribed a new medication on the day of the hearing. Tiara Colburn, a representative of respondent's Assertive Community Treatment Team (ACT Team), testified that respondent did not discuss her new medication with the ACT Team before the hearing. Previously, respondent informed her ACT Team case managers that she was not taking her medications and did not attend her medication review session with the prescribing physician.

The probate court recognized on the record that respondent was "doing really good and that she is mentally ill." Examining the testimony in the light most favorable to respondent, the court concluded "that she still needs assistance in handling her basic needs." However, the court ruled respondent did not require hospitalization and that AOT was sufficient to meet her needs. The probate court subsequently ordered AOT for up to one year, which included a case management plan and services, all services recommended by respondent's provider, ACT Team services, and any other services that GHS endorsed. The court indicated on the record that it would require medication testing, but that requirement is not reflected in the court's corresponding written order. This appeal followed.

## II. PERSON REQUIRING TREATMENT

Respondent argues that the probate court clearly erred by finding, by clear and convincing evidence, that respondent continued to be a person requiring mental health treatment. We disagree.

We review the probate court's dispositional decisions for an abuse of discretion and its factual findings for clear error. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). "An abuse of discretion occurs when the probate court 'chooses an outcome outside the range of reasonable and principled outcomes,' " and the probate court necessarily abuses its discretion when

it commits an error of law. *Id.* (citation omitted). " 'A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding.' " *Id.* (citation omitted). We review de novo issues of statutory interpretation. *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019).

> The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. This task begins by examining the language of the statute itself. The words of a statute provide the most reliable evidence of its intent.... If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.
>
> In interpreting the statute at issue, [this Court will] consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. As far as possible, effect should be given to every phrase, clause, and word in the statute. [*In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019) (quotation marks and citation omitted).]

We defer to the probate court on issues of witness credibility. *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 7-8.

This matter involves a proceeding for an order of continuing involuntary mental health treatment under the Mental Health Code, which is commonly known as a civil-commitment proceeding. *In re Jestila*, 345 Mich App 353, 356; 5 NW3d 362 (2023). The Mental Health Code requires that (1) the court find that the individual in question " 'continue[s] to be a person requiring treatment,' " and (2) if the first element is met, then the court " 'shall issue another continuing order for involuntary mental health treatment . . . for a period not to exceed 1 year.' " *Portus*, 325 Mich App at 385-386 (citations omitted). See also MCL 330.1472a(3); MCL 330.1473.

Under the Mental Health Code, the probate court must find that the respondent is a person requiring treatment by clear and convincing evidence. *Portus*, 325 Mich App at 385; MCL 330.1465. The clear-and-convincing-evidence standard of proof is generally known as "the most demanding standard" that may be applied in civil cases. *In re Conservatorship of Brody*, 321 Mich App 332, 337; 909 NW2d 849 (2017) (quotation marks and citation omitted). Clear and convincing evidence is evidence that

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (quotation marks and citation omitted; alterations in original).]

A "person requiring treatment" has three potential definitions under the Mental Health Code, but the only definition under which the probate court in this case found that respondent was a person requiring treatment is as follows:

> An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs. [MCL 330.1401(1)(b).]

Respondent does not challenge for purposes of this appeal that she has a history of mental illness as defined in MCL 330.1400(g), specifically schizophrenia and bipolar disorder. Instead, she argues there was not clear and convincing evidence that she could not attend to her basic needs at the time of the hearing. We disagree. To start, although the petition admittedly lacked specific details supporting the conclusion that respondent lacked insight into her mental health challenges and required continuing treatment, we conclude that the details were outlined in Dr. Kanzawa's clinical certificate and testimony.

Dr. Kanzawa delineated recent incidents in his clinical certificate and at the hearing.[1] For example, on January 10, 2025, respondent notified staff at a shelter in which she was staying temporarily that she no longer intended to stay there because she did not like being around police officers, who were presumably present at the facility. Respondent allegedly believed that individuals were tampering with her drinks and stealing her belongings. Respondent was evicted from a different warming center on January 6, 2025, for using the restroom too often. The staff at the warming center indicated respondent was stealing items from others and was harassing staff members. Dr. Kanzawa opined, "She continues to blame everyone else instead of herself for her own actions." The record indicated that respondent resided in a warming center as recently as January 16, 2025.

Respondent further purportedly refused to comply with the ACT Team and she declined to disclose where she was residing. Respondent rejected food from the police on the hospital campus because God told her they were trying to set her up. Additionally, in mid-January 2025, respondent informed the ACT Team that she was no longer compliant with her medication—an antipsychotic drug called Prolixin. She reported her noncompliance to Dr. Kanzawa during their meeting, expressing that she did not feel she needed the medication. Respondent assumed the medication was causing her to go to the bathroom frequently and to experience constipation. Regarding housing, Dr. Kanzawa testified that respondent lost her home to foreclosure in 2019, and he opined that respondent may not be able to handle her own finances. Respondent reported that she located an apartment in the weeks leading up to the hearing but refused to meet with the ACT Team or inform them of the location of her new apartment.

---

[1] As noted below, the probate court was able to consider respondent's present status in the context of her prior history. However, for purposes of this issue, we limit our analysis to the matters that arose since the prior court order.

For her part, respondent testified that her prior medication was causing her to experience uncomfortable side effects. Respondent was prescribed a new medication on the date of the hearing; thus, she had no demonstrated history of compliance. Concerning whether she had adequate food, respondent acknowledged that a security officer at Hurley Hospital offered her a sandwich on one occasion, which she declined simply because she did not want it. There was no other evidence that respondent was suffering from hunger. Regarding her time in emergency housing and the warming center, respondent explained that she was afraid of the possibility that an individual may steal her personal items, including her cell phone and important documents, while she was living in the shelter. She left the Shelter of Flint because the shelter accused her of being disruptive and removed her from the facility. The shelter allegedly falsely accused respondent of stealing when she was not.

Respondent further testified that she secured an apartment and identified the street on which it was located. Respondent maintained that she had an income from Social Security benefits and could pay her rent. Respondent recognized that she did not get along with the ACT Team workers because "they are rude and very unprofessional." The ACT Team additionally did not oversee respondent's medication after a period because respondent indicated that she no longer required assistance. According to respondent, the ACT Team did not help her with housing despite initial representations that they would. Respondent also denied suffering from schizophrenia.

We first disagree with respondent's argument that Dr. Kanzawa's opinion was based solely on respondent's past conduct and secondhand accounts of her behavior. Dr. Kanzawa's testimony was based in part on respondent's recent noncompliance with her medication, which was brought to light in January 2025, and her challenges in obtaining housing, as demonstrated by her recent stays in emergency housing as recently as mid-January 2025. Dr. Kanzawa personally interviewed respondent approximately two weeks before the hearing and was able to discuss the medication matter with her. Thus, Dr. Kanzawa's opinion was not only premised on respondent's previous behavior or indirect accounts. Moreover, as discussed below, we conclude that Dr. Kanzawa was permitted to testify regarding his opinions formed from his review of respondent's records.

The evidence indicated that respondent had a mental health history and was not communicative with the ACT Team in the period following the prior order. While the probate court recognized that respondent made significant strides since the previous court hearing and was "on [a] good path," respondent continued to demonstrate noncompliance with the ACT Team, housing, and medication. She continued to struggle with paranoia and accepting her schizophrenia diagnosis, despite having a diagnosis for at least three years. Respondent further informed Dr. Kanzawa that she did not need her medication, and she struggled to find stable housing in the month leading up to the hearing. Although respondent testified to experiencing side effects from her prior medication and that she was recently placed on a new medication, she had no demonstrated history of medication compliance. Respondent testified to securing an apartment only days before the hearing. It was the role of the probate court to assess respondent's credibility. See *MAT*, ___ Mich App at ___; slip op at 7-8. Therefore, the probate court did not clearly err by finding, by clear and convincing evidence, that respondent continued to be a person requiring treatment because she was unable to attend to her basic physical needs, such as housing and medication, as a result of her mental health conditions. See MCL 330.1401(1)(b).

## III. HEARSAY DATA

Respondent argues that the probate court plainly erred by permitting Dr. Kanzawa to testify, in part, on the basis of hearsay data in the form of the statements in respondent's mental health records. We disagree.

"To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 709-710; 922 NW2d 662 (2018). Although counsel raised the matter of hearsay during the hearing, respondent did not object to any specific hearsay statements during Dr. Kanzawa's direct examination or raise a standing hearsay objection. Therefore, the issue is unpreserved. Unpreserved issues in civil-commitment proceedings are reviewed for plain error affecting the respondent's substantial rights. *MAT*, ___ Mich App at ___; slip op at 2-3.

To establish plain error, the party seeking reversal must establish that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Finally, when the party seeking reversal satisfies these elements, the Court will exercise its discretion when deciding whether reversal is warranted, which is the case for purposes of civil proceedings "when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted; alteration in original).

The parties in a civil-commitment proceeding have the right to present evidence in the form of documents and witnesses and to cross-examine witnesses. MCL 330.1459(1). The Michigan Rules of Evidence apply with limited exceptions. MCL 330.1459(2). "The court shall receive all relevant, competent, and material evidence which may be offered." MCL 330.1459(2).

Hearsay is a statement not made by the declarant while testifying at trial that a party offers into evidence to establish the truth of the matter asserted in that statement. MRE 801(c). Hearsay is generally inadmissible at trial unless the statements in question fall under a hearsay exception. MRE 802. There are several hearsay exceptions outlined in MRE 803 and 804. MRE 807 further outlines a residual exception, which necessitates, among other requirements, reasonable notice. See MRE 807. However, MRE 1101(b) states, in relevant part:

> The rules—except for those on privilege—do not apply to the following:
>
> (10) In hearings under Chapters 4, 4A, 5, and 6 of the Mental Health Code, MCL 330.1400 *et seq*., during which the court may consider *hearsay data* that are part of the basis for the opinion presented by a testifying mental health expert. [Emphasis added.]

In *MAT*, ___ Mich App at ___; slip op at 7, this Court addressed the meaning of "hearsay data" in MRE 1101(b)(10), explaining that the term "refers to 'documents not personally prepared by [the witness.]' " *Id*. at ___ n 3; slip op at 7 n 3 (alteration in original), quoting *Kovacs v Chesapeake & Ohio R Co*, 134 Mich App 514, 541; 351 NW2d 581 (1984), aff'd 426 Mich 647 (1986). In *MAT*, the physician personally examined the respondent during an examination that

was characterized as " 'a bit brief' " because the respondent " 'got quite frustrated.' " *MAT*, ___ Mich App at ___; slip op at 7. Thus, the examining physician reviewed the record and spoke to hospital staff before the mental health hearing. *Id*. at ___; slip op at 7. He relied on statements from the respondent's father, who was also the petitioner, which this Court held constituted hearsay data under MRE 1101(b)(10). *Id*. at ___; slip op at 1, 7. The examining physician relied primarily on the records and statements of the respondent's father to support his opinions but did take note at the hearing of the respondent's demeanor when he interviewed her. *Id*. at ___; slip op at 7. This Court held the testimony based "partially" on statements by the respondent's father regarding the respondent's conduct was permissible and did not violate MRE 1101(b)(10). *Id*. at ___; slip op at 7-8. We decline to depart from this Court's holding in *MAT*, which is binding on subsequent panels of this Court. See *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004); MCR 7.215(J)(1).

We likewise decline respondent's argument that MRE 1101(b)(10) does not permit hearsay data in this type of mental health proceeding. Respondent relies on a staff comment to MRE 1101 to support her claim that the rule in question was only intended to apply during preliminary mental health hearings. The 2003 staff comment states, in relevant part, "New MRE 1101(b)(10) allows probate judges who are conducting *preliminary* mental health hearings to consider expert opinions that otherwise would be excluded by MRE 703 because the opinions are based on hearsay information." MRE 1101, 466 Mich xcvi (staff comment) (emphasis added). However, the language about a "preliminary mental health hearing" is not found within the court rule itself, and a staff comment is not considered binding authority. See *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 85; 832 NW2d 288 (2013). Moreover, the section of the Mental Health Code relating to preliminary hearings was repealed effective March 1996. See MCL 330.1450, repealed by 1995 PA 290.

Respondent further contends that the form report on the examination and clinical certificate issued by the State Court Administrator's Office, which is commonly completed to fulfill the clinical certificate obligation under the Mental Health Code, provides limited space for the physician to outline information not personally known or observed. Respondent argues that Dr. Kanzawa did not identify the source of the majority of the information on which he relied in his clinical certificate. However, Dr. Kanzawa provided several details in his clinical certificate to support his opinions. While he did not identify specifically the source of each fact cited in the clinical certificate, Dr. Kanzawa testified at the hearing and was cross-examined on these issues, as outlined previously.

In sum, *MAT* clarifies that under MRE 1101(b)(10), an examining physician may testify about documents containing hearsay data that formed the basis for his or her opinions, even when the hearsay data is the primary basis for the expert's opinion. Dr. Kanzawa personally examined respondent on January 17, 2025, thus meeting the requirement of MCL 330.1561(1). While Dr. Kanzawa relied substantially on respondent's records, he also explained that respondent made concerning statements to him during her interview, including that she stopped taking her medications and did not accept her diagnosis. Accordingly, the probate court did not plainly err by allowing Dr. Kanzawa to partially testify on the basis of statements in respondent's records.

IV.  SCOPE OF AOT

Respondent argues that the probate court abused its discretion by failing to determine the propriety of the proposed course of treatment for respondent.  Respondent further argues that the petition's stated request for AOT was deficient.  We disagree.

The probate court ordered AOT in lieu of hospitalization as permitted under MCL 330.1468(2)(d).  This Court has explained that "the probate court does not have unfettered discretion to choose a form of treatment and placement for an individual found to be a person requiring treatment." *Portus*, 325 Mich App at 390.  Rather, "the probate court is required to order the preparation of a report on the availability and appropriateness of alternatives to hospitalization for the individual and, after reviewing that report, make particular determinations related to potential alternatives to hospitalization." *Id.*, citing MCL 330.1453a and MCL 330.1469a(1).  The probate court must decide

> (1) whether an alternative treatment program is adequate to meet the individual's treatment needs, (2) whether an alternative treatment program is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future, and (3) whether an agency or mental health professional is available to supervise the individual's alternative treatment program. [*Portus*, 325 Mich App at 390 (quotation marks omitted), quoting MCL 330.1469a(1)(a) and (b).]

The probate court also must inquire regarding the respondent's desires for hospitalization alternatives.  *Portus*, 325 Mich App at 390, citing MCL 330.1469a(1)(c).  When these criteria are established, the court must order AOT, or combined hospitalization and AOT when applicable. *Portus*, 325 Mich App at 390-391, citing MCL 330.1469a(2).

MCR 5.741, which relates to mental health proceedings in the probate court, provides as follows:

> (A) Before ordering a course of involuntary mental health treatment or of care and treatment at a center, the court must receive a written report or oral testimony describing the type and extent of treatment that will be provided to the individual and the appropriateness and adequacy of this treatment.

> (B) The court may receive a written report in evidence without accompanying testimony if a copy is filed with the court before the hearing.  At the time of filing the report with the court, the preparer of the report must promptly provide the individual's attorney with a copy of the report.  The attorney may subpoena the preparer of the report to testify.

Additionally, MCL 330.1473 states, in pertinent part, that

> [t]he petition shall contain a statement setting forth the reasons for the hospital director's or supervisor's or their joint determination that the individual continues to be a person requiring treatment, a statement describing the treatment program

-8-

provided to the individual, the results of that course of treatment, and a clinical estimate as to the time further treatment will be required.

Turning first to the adequacy of the petition's request for AOT, the requirements of MCR 5.741(A) and MCL 330.1473 were satisfied because the probate court received a written report outlining the type and extent of AOT that would be provided to respondent, with the opinion that the treatment would be appropriate and adequate. The petition requested that respondent undergo a combination of hospitalization and AOT. Kiel indicated in the petition that the results of respondent's treatment program were "fair" for both case management and medication. She opined that the present treatment was sufficient and appropriate for respondent's condition, yet respondent was not motivated to participate. Kiel estimated that the time necessary to provide treatment was one year and indicated that there were no planned modifications for the next treatment period.

Kiel recommended certain AOT, including a case management plan and services, all services recommended by the treatment provider, testing to determine compliance or effectiveness of medication, ACT Team services, and "[a]ny evidence-based practice determined clinically necessary by the treatment team." Thus, the petition constituted a written report describing the type and extent of the treatment to be provided to respondent, in addition to the appropriateness and adequacy of the treatment. See MCR 5.741(A). Additionally, the petition met the requirements of MCL 330.1473. The petition contained a statement delineating the reasons for the determination that respondent continued to require treatment, a statement describing the treatment program provided, a discussion of the results of the treatment, and an estimate on the time further treatment will be required, which was one year. See MCL 330.1473.

As it relates to the AOT ordered by the court, the probate court did not abuse its discretion by ordering AOT tailored to respondent and her circumstances. The probate court determined that AOT was available as an adequate alternative to hospitalization to fulfill respondent's treatment needs, that AOT was sufficient to prevent harm respondent may inflict upon herself or others, and that there was an agency or mental health professional available to supervise the treatment program. See *Portus*, 325 Mich App at 390. As previously stated, respondent testified that she did not think she had a mental health condition or required treatment. Therefore, the requirements of MCL 330.1469a were met.

Although she continued to be a person requiring treatment, respondent's overall mental condition was improving and stabilizing. Thus, in lieu of hospitalization, the probate court ordered AOT. Respondent argues that there was no clear end date for the treatment, but the order specified the treatment would last for not longer than one year. Additionally, the AOT appeared tailored to respondent, who was improving and heading on a "good path." Respondent's issues were her lack of understanding of her need for treatment, lack of cooperation with her ACT Team, and lack of demonstrated stability with housing and medication. The AOT included a case management plan and services, ACT Team services, and GHS case management. The probate court did not abuse its discretion by finding these measures were conservative treatment options that took into consideration the fact that respondent was improving and were adequate to meet respondent's treatment needs. See MCL 330.1469a(2).

Respondent further contends that the perceived lack of compliance with the prior order was based on a misunderstanding about whether respondent wanted to take her medication or was experiencing adverse side effects. She argues she should not be forced to take medication. Yet the court's order did not include any medication services. The court speaks through its written orders rather than its oral pronouncements on the record. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).[2] Therefore, the probate court did not abuse its discretion in ordering a modest AOT plan that complied with the statutory requirements.

## V. ADDITIONAL EVIDENTIARY ISSUES

Respondent raises several additional evidentiary arguments, including an argument that the probate court improperly examined her past behavior to demonstrate present and future harm, improperly restricted the scope of cross-examination, and erroneously failed to consider closing arguments before ruling. We disagree.

Respondent did not object to the admission of evidence relating to respondent's past behavior, the court's decision to proceed with ruling on the petition without hearing arguments, or the probate court's decision to limit her cross-examination of Colburn. Therefore, the issues are unpreserved and reviewed for plain error. See *MAT*, ___ Mich App at ___; slip op at 2-3; *Nahshal*, 324 Mich App at 709-710.

## A. EVIDENCE OF RESPONDENT'S PAST CONDUCT

To support her argument that the probate court plainly erred by considering evidence of her past circumstances, respondent relies on *People ex rel Book v Hooker*, 83 Mich App 495, 502; 268 NW2d 698 (1978),[3] in which this Court held that the Mental Health Code prohibited the probate court from allowing "continued commitment based on the general opinion of a psychiatrist."

While the Mental Health Code has been amended since *Book*, the current language of the relevant provision of the Mental Health Code, MCL 330.1401, delineates the relevant standard for determining whether an individual is a person requiring treatment in the present tense. The statute provides that a person requiring treatment is, in relevant part,

> [a]n individual who has mental illness, and who as a result of that mental illness *is* unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm

---

[2] We note that medication services would have been appropriate regardless considering that respondent was not taking her prior medication leading up to the hearing and had not yet started her new medication at the time of the hearing.

[3] Opinions of this Court issued before November 1, 1990, are not strictly binding but are considered precedent and entitled to a significantly greater amount of deference than unpublished cases. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

in the near future, and who *has* demonstrated that inability by failing to attend to those basic physical needs. [MCL 330.1401(1)(b) (emphasis added).]

This Court has held that the tense in which a statute is written is a relevant consideration when interpreting the statute. See, e.g., *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 590; 977 NW2d 128 (2021); *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018). The language of the statute suggests that the court should consider the respondent's present status for purposes of determining whether an individual has a mental illness and is currently unable to care for his or her basic physical needs. However, the statute contains no restriction on the probate court's ability to consider the respondent's prior conduct in the context of the case when deciding whether he or she has demonstrated an inability to attend to his or her basic needs. The probate court will likely have a working knowledge of the respondent's case from the prior court hearings. Nothing in the language of the statute prohibits the probate court from considering a respondent's past to determine whether, at present, the respondent continue to be a person requiring treatment.[4]

Respondent also argues that the court is prohibited from considering past conduct supporting prior petitions under the doctrine of res judicata. "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (quotation marks and citation omitted). This case does not present a situation involving multiple lawsuits. Rather a petition for continued mental health treatment was filed in the same case requesting ongoing mental health treatment.

Additionally, the elements of res judicata include "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. (quotation marks and citation omitted). The elements of res judicata are not met in this case considering that the scheme outlined in the Mental Health Code is designed to permit the probate court to make ongoing, periodic decisions about a respondent's mental health status following an initial petition. The doctrine of res judicata did not bar the probate court from considering respondent's prior conduct to the extent it might provide context for her current mental health status. Finally, we note that any error in relation to this issue was not outcome-determinative. As noted previously, there was clear and convincing evidence to support a finding that respondent continued to be a person requiring treatment even when the scope of review was limited to the period after the last court order.

---

[4] To support her position, respondent relies on MCL 330.1420, which in relevant part requires that the petition for mental health treatment be accompanied by one clinical certificate of a psychiatrist and one clinical certificate signed by either a physician or licensed psychologist. However, MCL 330.1420 does not shed light on whether the probate court could consider evidence of past conduct to support a finding on whether respondent was a person requiring treatment.

-11-

## B. SCOPE OF CROSS-EXAMINATION

The probate court also did not plainly err by limiting cross-examination of Colburn, a representative of respondent's ACT Team, to the subject of respondent's medication. MCL 330.1459 provides that in civil-commitment proceedings the parties have the right to present evidence and cross-examine witnesses. MCL 330.1459(1). The probate court questioned Colburn under oath, and the scope of her testimony was limited to issues relating to respondent's medication. The probate court had discretion to limit the scope of cross-examination on matters not included in the testimony on direct examination. MRE 611(c). See also MCL 330.1459(2) (explaining that the Michigan Rules of Evidence generally apply in civil-commitment proceedings). Therefore, the probate court did not commit a plain error by limiting the scope of cross-examination to the subject of Colburn's direct examination. See *Carines*, 460 Mich at 763.

## C. CLOSING ARGUMENTS

Lastly, the probate court did not plainly err by ruling on the petition without considering closing arguments from either party. We note respondent does not cite any provision of the Mental Health Code that would require the probate court to permit the parties to give closing arguments, and her counsel did not expressly request a closing argument on the record. As far as prejudice, respondent argues that her counsel would have argued that petitioner could not use outdated evidence to support the petition. But the probate court was able to consider respondent's history in determining whether she continued to be a person requiring mental health treatment. Therefore, respondent is not entitled to relief under the plain-error standard. See *id.*

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi

-12-