*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH SUGHNEN YONGO,

Plaintiff-Appellant,

V

IKECHUKWU AUGUSTINE OKOCHI,

Defendant-Appellee.

UNPUBLISHED
March 11, 2026
10:00 AM

No. 375198
Ottawa Circuit Court
LC No. 2023-100366-DM

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Plaintiff, Sarah Sughnen Yongo, appeals as of right the trial court order denying her motion to change the domicile of the minor children, EO and JO, from Michigan to Houston, Texas. We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

Plaintiff and defendant, Ikechukwu Okochi, were married in 2020 and divorced in 2024. The judgment of divorce awarded primary physical custody of the parties' two minor children to plaintiff, joint legal custody to plaintiff and defendant, and parenting time to defendant. Plaintiff appealed from the judgment of divorce, raising evidentiary and due-process challenges and claiming judicial bias. A panel of this Court concluded that plaintiff had not established the claimed errors and affirmed the judgment of divorce.[1]

On February 20, 2025, plaintiff moved to change the children's domicile from Michigan to Houston, Texas. Plaintiff scheduled the hearing on her motion for March 4, 2025, to coincide with her previously filed motion to address defendant's conduct during parenting-time exchanges. During the hearing, plaintiff testified that she spent most of February in an outpatient treatment program at a mental-health facility in Texas. The trial court resolved plaintiff's parenting-time

---

[1] *Yongo v Okochi*, unpublished per curiam opinion of the Court of Appeals, issued March 25, 2025 (Docket No. 371718).

motion but lacked the time to address her domicile motion and scheduled the matter for the following day.

When the hearing resumed on March 5, 2025, defendant asked for an adjournment on the basis of newly received information, including allegations related to plaintiff's treatment in Texas, JO's extended absence from her autism treatment, and that plaintiff was the subject of a pending Children's Protective Services (CPS) investigation. Defendant sought an adjournment to arrange for witnesses to testify about this new information. Plaintiff opposed the adjournment, arguing that none of what defendant said was true and that he was simply trying to derail her motion to change domicile. Plaintiff offered to make phone calls to disprove defendant's comments, but the trial court declined to take evidence over the phone. Noting that disputed questions arose from the new information and that neither party had requested subpoenas to bring in third parties to establish the facts, the trial court found good cause to grant defendant's motion to adjourn to allow the parties to bring in the evidence that they argued was relevant.

Defendant identified Elizabeth Richards and Dawn Haase as witnesses at the hearing on plaintiff's motion. Plaintiff moved in limine under MRE 403, 404(b), and 602 to exclude their testimony about plaintiff's past alcohol use, her mental-health and post-traumatic stress disorder history, and her rehabilitation stay. She also asked the trial court to allow her to impeach Richards and Haase under MRE 613, as they had testified on plaintiff's behalf at the parties' divorce trial. The trial court denied plaintiff's motion without prejudice. It explained that plaintiff's "motion does not state appropriate grounds for a motion in limine." Even so, it recognized that plaintiff's objections to the witnesses' anticipated testimony might be enough to limit their testimony on certain subjects or might provide a basis for impeachment; however, these were issues best raised during direct examination or cross-examination.

The hearing on plaintiff's motion to change domicile resumed on March 26. CPS investigator Madilyn Thurmond testified that the CPS investigation to which defendant referred at the March 5 hearing arose from allegations against him. Thurmond affirmed that she considered plaintiff a fit parent, and she added that CPS also viewed defendant as a fit and appropriate parent. Under questioning by the trial court, Thurmond affirmed that she did not substantiate any of the allegations that she investigated.

Nnenna Odoemenam, a representative for Streamline Security Services, testified remotely from Houston. Odoemenam confirmed that the company had offered plaintiff a job as Senior Brand Strategist with an annual salary of $110,000, and she read the company's job-offer letter into the record. Odoemenam testified that the position required plaintiff's presence in Houston and that the company offered a relocation package.

Testifying on her own behalf, plaintiff indicated that the job opportunity in Houston would allow her to use her education and talents to provide for her children rather than relying on public assistance and child support. Plaintiff said that she looked unsuccessfully for suitable jobs in Michigan. Plaintiff proposed a parenting-time schedule that gave defendant two months' parenting time in Michigan during the summer and parenting time on alternating holidays and special occasions. Plaintiff would arrange and pay for the cost of round-trip airfare for the children's visits to Michigan, as well as for any escort services required. The plan also called for the noncustodial parent to have video calls with the children at least three times each week, as well as text and video

messaging "as appropriate." Plaintiff maintained that her arrangements for defendant to have parenting time while she was in Texas, including offers of additional parenting time, proved that she was not trying to defeat or frustrate defendant's parenting time. Plaintiff further maintained that she and the children would benefit from the robust support network that she would have in Texas. Plaintiff asserted that the timing of defendant's child support payments was inconsistent and that the trial court was well aware of the history of domestic violence between the parties; specifically, of defendant's "course of control." With that, plaintiff believed that she had met the requisite burden of proof, and she urged the trial court to grant her motion to change the children's domicile.

As indicated, the trial court denied plaintiff's motion, concluding that the factors in MCL 722.31(4) did not support a change in domicile. Plaintiff moved for reconsideration, which the trial court denied. Thereafter, plaintiff filed a supplemental motion for reconsideration, which the trial court also denied. Plaintiff now appeals.

## II. DISCUSSION

## A. CHANGE OF DOMICILE

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors in MCL 722.31(4) under the great weight of the evidence standard." *Rains v Rains*, 301 Mich App 314, 324; 836 NW2d 709 (2013) (quotation marks and citation omitted). With respect to custody issues, a court abuses its discretion when it chooses a result that "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994). This Court "may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Rains*, 301 Mich App at 324 (quotation marks and citation omitted). In addition, this Court defers to the trial court on matters involving credibility determinations. See *id*. at 336.

## 1. LEGAL FRAMEWORK

A parent requesting a change in domicile for herself and her children has the burden of establishing by a preponderance of the evidence that change is warranted. *McKimmy v Melling*, 291 Mich App 577, 582; 805 NW2d 615 (2011). A motion for a change of domicile requires a four-part analysis. See *Rains*, 301 Mich App at 325.

First, the trial court must determine whether the moving party has shown by a preponderance of the evidence that the factors in MCL 722.31(4) support the move. *Id*. These factors are as follows:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child. [MCL 722.31(4)(a)-(e).]

Second, if the statutory factors support the motion for a change of domicile, "then the trial court must then determine whether an established custodial environment exists." *Rains*, 301 Mich App at 325. Third, if the trial court finds that an established custodial environment exists, "the trial court must then determine whether the change of domicile would modify or alter that established custodial environment." *Id*. Fourth, "if and only if, the trial court finds that a change of domicile would modify or alter a child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence." *Id*.

### 2. MCL 722.31(4)(a)

Plaintiff contends that the trial court erred by concluding under MCL 722.31(4)(a) that she failed to prove that the change in domicile would benefit the children.[2] Plaintiff asserts that the

---

[2] In its opinion, the trial court recognized that plaintiff had earlier filed a motion to relocate the children to Connecticut as well as a motion to alternatively travel or relocate to Nigeria, which it denied without hearing. The trial court further took judicial notice of the civil actions plaintiff had filed against defendant, defendant's friend, and two couples who were previously identified as the children's godparents.

Under MRE 201(b), a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." MRE 201(b). A "court may take judicial notice at any stage of the proceeding." MRE 201(c). Moreover, it is well-established that a court is permitted to take judicial notice of its own files and records. See e.g., *Knowlton v Port Huron*, 355 Mich 448, 452; 94 NW2d 824 (1959) ("[A] circuit judge may take judicial notice of the files and records of the court in which he sits."); *In re Jones*,

trial court clearly erred by minimizing the relocation's benefit to the children and dismissing as "unsupported" plaintiff's evidence of the superior schooling options and support network in Houston. We disagree.

Under MCL 722.31(4)(a), the trial court found that the proposed change in domicile would improve plaintiff's quality of life but that it would not improve the children's quality of life. Specifically, it would not offset the children's loss of high-quality services and programs or their frequent and regular contact with defendant. The trial court also found that the increase in plaintiff's income did not outweigh the children's frequent and regular contact with defendant. The court opined that defendant and his support system were necessary to provide oversight and protection for the children should plaintiff experience further mental-health or substance-abuse crises. These findings were not against the great weight of the evidence. See *Rains*, 301 Mich App at 324.

"[A]n increase in a parent's income may improve a child's quality of life." *Yachcik v Yachcik*, 319 Mich App 24, 40; 900 NW2d 113 (2017). This recognition does not relieve the proponent of a change in domicile from the burden of showing by a preponderance of the evidence that the relocation has the capacity to improve the child's quality of life. See *Rains*, 301 Mich App at 325.

Plaintiff represented during the hearing that the proposed relocation would improve the children's quality of life because her substantially increased income would allow her to provide them with better services and treatment programs, and Houston would offer better educational opportunities. Plaintiff contended that, because of the family's economic situation, the children did not receive the high-quality services and treatments that they needed. Plaintiff did not identify any services or treatments that the children needed but were not receiving because of the family's economic situation, nor was she able to do more than speculate that her increase in income would allow the children access to more beneficial care. Notwithstanding plaintiff's burden to establish that the proposed move would enhance the children's quality of life, see *id.*, plaintiff asserted during cross-examination that she was "not here to prove anything" and that defendant could do his own research into the opportunities in Houston for children with specialized needs. Although the proposed move may have improved the children's quality of life, plaintiff did not present any evidence from which the trial court could reasonably draw this conclusion.

Regarding plaintiff's assertion that Houston offered improved schooling options, "[t]his Court has recognized that the benefits of the school or school district where the moving party plans to relocate is a relevant consideration under MCL 722.31(4)." *Yachcik*, 319 Mich App at 41. On the last day of the hearing, the trial court admitted into evidence plaintiff's copy of the curriculum of Veritas Christian Academy of Houston, the school in which plaintiff proposed to enroll the children. No testimony was offered about the children's Michigan school, the quality of Veritas Christian Academy of Houston, the practicality and logistics of the children attending the school, or the school's ability to meet the children's special needs. On this record, it cannot be said that

---

286 Mich App 126, 129; 777 NW2d 728 (2009) (reasoning that the trial court could take judicial notice of previous termination of parental rights that occurred before the same judge).

the trial court's conclusion that plaintiff's assertion of the superior schooling options in Houston was unsupported.

As to the support system that plaintiff said was available to her and the children in Houston, "living in close proximity to immediate and extended family members and remaining in a stable environment are relevant considerations with regard to MCL 722.31(4)(a)." *Yachcik*, 319 Mich App at 44. Plaintiff alleged in her motion to change domicile that relocating to Houston would provide access to support from both nuclear and extended family. Defendant disputed that plaintiff had nuclear family in Houston, observing that plaintiff's parents and sister lived overseas, and her brother was deceased. As to extended family, defendant acknowledged that plaintiff had an aunt who lived in Houston who had provided support during plaintiff's rehabilitation. He contended, though, that "one auntie" did not constitute a "support system," particularly when compared to the support system provided by him, the children's two sets of godparents, and other family and friends in Michigan. Plaintiff denied that her associates in Houston were limited to her aunt. Instead, plaintiff testified that she had "cousins," "uncles," and friends "in Texas." In her closing argument, plaintiff named one aunt, one uncle, and three cousins.[3] She also mentioned "trusted friends," many of whom she graduated with from New York University. The trial court concluded that the evidence supported a finding that plaintiff had an aunt living in Houston, that plaintiff "alleged an unnamed cousin, and that plaintiff "identified no 'nuclear family' there." Further, although plaintiff identified two or three other males as uncles, it "appear[ed] that they [were] not actually extended family members, but [were] referred to as such as a culturally-based sign of respect or endearment." The trial court reached this conclusion because defendant had questioned plaintiff about a man whom she had identified as her "uncle," who was to retrieve the children from defendant. Defendant did not know this man as plaintiff's "uncle," and plaintiff later explained that the man was actually "a missionary that . . . [had] stayed in Nigeria for over 30 years." On this record, we cannot substitute our judgment for those made by the trial court on these points. *Rains*, 301 Mich App at 324, 336.

Plaintiff further contends that *Brown v Loveman*, 260 Mich App 576, 601; 680 NW2d 432 (2004), compelled a finding that the substantial increase in income from the Texas job offers would improve her life and the children's lives. We disagree.

The nonrelocating parent in *Brown* argued on appeal that the trial court erred by granting the relocating parent's motion to change domicile when there was no testimony demonstrating that the move had the capacity to improve the child's life. This Court rejected the nonrelocating parent's argument on the basis of this Court's holding in *Bielawski v Bielawski*, 137 Mich App 587, 593; 358 NW2d 383 (1984), "that a substantial increase in income that will elevate the quality

---

[3] As with attorney's arguments, see *In re Conservatorship of Brody*, 321 Mich App 332, 349; 909 NW2d 849 (2017), a party's arguments cannot be considered as evidence. See and compare *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021) (recognizing that *in propria persona* litigants are entitled to some leniency), with *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973) ("Appearance in pro per does not excuse all application of the court rules . . . .").

of life of the relocating parent and child supports a finding that a party has met its burden of proof under [MCL 722.31(4)(a)]." *Brown*, 260 Mich App at 601.

The trial courts in *Bielawski* and *Brown* used the *D'Onofrio*[4] factors to analyze the custodial parents' motions to change domicile. The *D'Onofrio* test "focus[ed] on what [was] in the best interest of the new family unit, i.e., the parent and child." *Id*. at 598. When our Legislature codified the *D'Onofrio* factors as MCL 722.31(4), the Legislature required trial courts to consider the enumerated factors "with the child as the primary focus of the court's deliberations." MCL 722.31(4). This shift in focus represented a departure from the *D'Onofrio* factors' focus on the potential benefits to the custodial family unit as a whole. Consequently, economic benefit to the custodial family as a whole is not the only consideration relevant under MCL 722.31(4)(a). See *Yachcik*, 319 Mich App at 43-45. Therefore, the trial court in this case was not compelled to find that the proposed relocation to Houston had "the capacity to improve the quality of life for both the child and the relocating parent" on the basis of plaintiff's potential increase in income alone.

Plaintiff raises claims of error arising from the trial court's misstatement at the March 4, 2025 hearing and the court's statement in the order appealed that plaintiff had written a text message that was actually authored by Richards. After reviewing these errors, we conclude that plaintiff has not established that either error entitles her to relief.

Lastly, plaintiff argues that the trial court clearly erred by finding that defendant consistently provided financial support, despite employment issues. This issue is not properly before this Court because plaintiff did not raise it in her statement of the questions presented, and, therefore, it is abandoned. See MCR 7.212(C)(5); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). Regardless, plaintiff predicates her claim of error on information that she acknowledges was not part of the record in the trial court because it arose after the court rendered its decision on plaintiff's motion to change domicile. This Court's review is generally limited to the record of the trial court or tribunal, see *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009), and parties may not normally expand the record on appeal, see *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011). And we see no reason to exercise our discretion under MCR 7.216(A)(4) to consider the import of the later-arising evidence of defendant's child support arrearage.

For the foregoing reasons, we conclude that the trial court's findings under MCL 722.31(4)(a) were not against the great weight of the evidence.

---

[4] See *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976); *Dick v Dick*, 147 Mich App 513, 517; 383 NW2d 240 (1985) (requiring application of the *D'Onofrio* factors to a custodial parent's petition to remove children from the state).

### 3. MCL 722.31(4)(c)

Plaintiff next contends that the trial court clearly erred by finding that relocation would defeat the relationship between defendant and the children in light of plaintiff's proposed comprehensive parenting-time plan. We again disagree.

The trial court considered the parties' compliance with parenting-time orders under MCL 722.31(4)(b), finding that, after a rough start that ended with plaintiff being held in civil contempt of court for parenting-time violation, fined $100, and given a suspended sentence of five days in jail, during the six months before the hearing on plaintiff's motion, the parties followed the phased-in parenting-time schedule outlined in their judgment of divorce. On the basis of this history, the court concluded that plaintiff's compliance with existing parenting-time orders was reluctant and resulted only from the court's enforcement of those orders.

Weighing heavily in the trial court's conclusion that MCL 722.31(4)(c) did not support plaintiff's motion for a change in domicile was the court's assessment of the likelihood that plaintiff would comply with the amended proposed parenting-time plan, as well as of the financial difficulty that defendant would likely face trying to enforce parenting-time orders against an out-of-state parent. Considering plaintiff's reluctant compliance with the governing parenting time order, her violation of previous temporary-parenting time orders, and the expense that defendant would incur trying to enforce parenting-time orders against plaintiff in Texas, the trial court could not conclude that plaintiff's proposed parenting time schedule gave defendant " 'a realistic opportunity to preserve and foster the parental relationship . . . .' " *Mogle v Scriver*, 241 Mich App 192, 204; 614 NW2d 696 (2000), citing *Anderson v Anderson*, 170 Mich App 305, 310-311; 427 NW2d 627 (1988). Given the record evidence of the parties' past and present compliance with parenting-time orders, and mindful of this Court's deference to the trial court's opportunity to assess plaintiff's credibility regarding compliance with the proposed parenting-time plan, see *Brown*, 332 Mich App at 8; MCR 2.613(C), we cannot say that the evidence preponderated against the trial court's findings under MCL 722.31(4)(c).

Plaintiff contends that arranging for defendant to have parenting time while she traveled to Nigeria in January 2023, and asking the trial court to reschedule parenting time when the March 31, 2025 proceeding ran long, demonstrate that she has repeatedly made good-faith efforts to facilitate the children's relationship with defendant. We are not convinced. Although plaintiff arranged for defendant to see the children in January 2023, plaintiff subsequently withheld the children for six months, refused to cooperate with two supervised parenting-time agencies, and was ultimately held in contempt for violating parenting-time orders. As to the March 31 request to reschedule parenting time, the record strongly suggests that the request was made for plaintiff's convenience rather than to ensure that defendant exercise his full parenting time. The trial court preferred for parenting time to occur, even if it began late, and granted plaintiff's request only after defendant agreed to the rescheduling.

For the foregoing reasons, we conclude that the facts do not clearly preponderate against the trial court's finding that the proposed parenting-time plan did not provide a realistic opportunity for defendant to preserve and foster the parental relationship with his children.

### 4. MCL 722.31(4)(e)

Plaintiff also contends that the trial court was required to find that MCL 722.31(4)(e) (domestic violence) supported her motion to change domicile solely because it found that MCL 722.23(k) (domestic violence) favored her during the parties' divorce proceeding. Plaintiff cites no authority in support of her position. In fact, authority suggests the contrary. That a trial court is not always bound by a prior best-interest analysis is evident from the requirement to conduct a new best-interest analysis on updated information when determining a properly supported motion to change custody. MCL 722.27(1)(c); see *Vodvarka v Grasmeyer*, 259 Mich App 499, 516-517; 675 NW2d 847 (2003).

Plaintiff relied on the trial court's earlier determination under MCL 722.23(k) to establish that MCL 722.31(4)(e) weighed in favor of relocation; she submitted no evidence of domestic violence between the parties other than what the trial court considered during the divorce proceeding. The trial court appears to have based its assessment of MCL 722.23(k) on plaintiff's perceptions of defendant's conduct, not on any documentation that plaintiff presented during the divorce trial. However, postjudgment developments led the trial court to reassess plaintiff's credibility when considering domestic violence under MCL 722.31(4)(e). Mindful of the "special deference" that this Court typically gives "to the trial court's credibility assessments," *Brown*, 332 Mich App at 8, we conclude that the trial court's determination that the parties were equal with respect to MCL 722.31(4)(e) was not against the great weight of the evidence.

### B. MOTION IN LIMINE

Plaintiff argues that the trial court abused its discretion and violated her right to due process by denying her motion in limine, allowing former friends to testify, and then crediting that testimony, despite its prejudicial impact. We again disagree.

We review for an abuse of discretion a trial court's decision on a motion in limine. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (quotation marks and citation omitted).

In this case, the trial court's denial of plaintiff's motion in limine without prejudice was not a final ruling. Rather, the ruling preserved the trial court's ability to reconsider evidentiary issues as the hearing progressed and additional context emerged, and it allowed plaintiff to reassert her objections to testimony offered at the hearing. Because the trial court's ruling on plaintiff's motion in limine did not foreclose her ability to obtain a ruling excluding inadmissible testimony, the trial court's decision did not "fall outside the range of principled outcomes." *Id.*

At the hearing on her motion to change domicile, plaintiff objected to testimony on the grounds of prejudice, credibility, and relevance. The trial court overruled her objections, observing that simple prejudice and lack of credibility were not valid grounds for an objection and that testimony that plaintiff thought irrelevant was actually relevant to the best-interest factors. Plaintiff does not challenge any of these specific evidentiary rulings on appeal. Therefore, we may

consider as abandoned any claim of error arising from the trial court's specific evidentiary rulings. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2009).

Furthermore, whether the trial court credited Richards's and Haase's testimonies cannot be discerned from the trial court's written opinion and order. And plaintiff has not shown how crediting their testimony factored into the trial court's determinations under MCL 722.31(4). Although Richards's and Haase's testimony may have been relevant to whether the change in domicile was in the children's best interests, the proceeding did not advance that far. Because the trial court concluded that the factors in MCL 722.31(4) did not support a change in domicile, there was no need for the court to make findings regarding the existence of an established custodial environment or whether the proposed change in domicile would be in the children's best interests. See *Rains*, 301 Mich App at 325. Therefore, any error by the trial court in crediting Richards's and Haase's testimonies was harmless and does not warrant disturbing the trial court's judgment. See MCR 2.613(A).

In light of the foregoing, we conclude that the trial court did not abuse its discretion by denying plaintiff's motion in limine without prejudice, that plaintiff abandoned any claims of error predicated on the trial court's evidentiary rulings during the hearing, and that she has not shown that the trial court credited Richards's and Haase's testimony or that it considered their testimony in assessing the factors under MCL 722.31(4).

## C. JUDICIAL BIAS

Plaintiff next argues that several of the trial court's remarks in its written opinion and order denying her change-of-domicile motion created an appearance of bias that necessitates reassignment of the case to a different judge. Plaintiff also asserts that the trial court's bias affected its conclusion under MCL 722.31(4)(b) that plaintiff's compliance with existing parenting-time orders was reluctant and resulted only from the court's enforcement of those orders, and that her motion to change domicile was based in part on her desire to defeat or frustrate defendant's parenting-time schedule. We are not persuaded.

After the trial court issued the order denying plaintiff's motion to change domicile, plaintiff filed a renewed motion to recuse the trial judge. The judge denied plaintiff's motion.

We review a trial court's factual findings underlying a ruling on a motion for disqualification for an abuse of discretion. *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). But we review de novo the trial court's application of the facts to the law. *Id*.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Id*. A party who challenges a judge for disqualifiable bias or partiality must overcome a heavy presumption of judicial impartiality. *Cain v Mich Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).

MCR 2.003(C) lists several, nonexclusive grounds warranting disqualification. Under MCR 2.003(C)(1)(a), disqualification is warranted when "[t]he judge is biased or prejudiced for or against a party or attorney." "A showing of prejudice usually requires that the source of the bias be in events or information outside the judicial proceeding." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). "Disqualification on the basis of bias or prejudice cannot be

established merely by repeated rulings against a litigant, even if the rulings are erroneous." *Id*. "Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible. . . ." *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003) (alteration, quotation marks, and citations omitted); see also *In re Conservatorship of Brody*, 321 Mich App 332, 350; 909 NW2d 849 (2017).

MCR 2.003(C)(1)(b) allows disqualification under the following circumstances:

> The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Canon 2 of the Michigan Code of Judicial Conduct instructs judges, in relevant part, to (1) "avoid all impropriety and appearance of impropriety"; (2) "respect and observe the law"; (3) "not allow family, social, or other relationships to influence judicial conduct or judgment" and "not use the prestige of office to advance personal business interests or those of others"; (4) "not appear as a witness in a court proceeding unless subpoenaed"; (5) "not allow activity as a member of an organization to cast doubt on the judge's ability to perform the function of the office" lawfully and properly; and (6) not "accept any contribution of money . . . for a campaign deficit or for expenses associated with judicial office."

Plaintiff has not overcome the presumption that the trial judge was unbiased. Plaintiff asserts that various of the trial court's observations and rulings display bias. Yet, she has not identified any extrajudicial source of bias, *In re MKK*, 286 Mich App at 566, and judicial rulings are not a basis for a claim of bias unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Gates*, 256 Mich App at 440 (quotation marks and citation omitted). Because the challenged opinions, rulings, and conduct of the trial judge in this case are supported by the record, plaintiff has not provided this Court with a basis to conclude that the trial judge erred by failing to recuse himself.

Plaintiff objects to the trial court's characterization of her as "thin-skinned," prone to "immediately end friendships and burn bridges," and "motivated more by personal conflict than by the children's best interests." Because this characterization arose from the court's observations of plaintiff's conduct during the judicial proceedings and lacks evidence of a "a deep-seated favoritism or antagonism that would make fair judgment impossible," it does not constitute a basis for a bias or partiality motion. *In re Conservatorship of Brody*, 321 Mich App at 350 (quotation marks and citation omitted).

Plaintiff asserts that the trial court ignored her compliance with parenting-time orders when assessing MCL 722.31(4)(b). To the contrary, the court observed that the parties had consistently followed its parenting-time orders during the six months before the change-of-domicile hearing. To the extent that plaintiff relies on her request to reschedule parenting time when the March 31 proceeding encroached on defendant's parenting time as evidence of her compliance with parenting time orders, as already indicated, the record suggests that plaintiff requested the change

-11-

in parenting time to save herself from the inconvenience of having to scramble to pick up the children and transport them to parenting time.  Even viewed through plaintiff's interpretive lens, this incident does not tip the scale against the trial court's finding under MCL 722.31(b).

Plaintiff next asserts that the trial court's bias was evident in two misattributions to plaintiff of text messages sent by others: (1) a text in which Haase referred to defendant as an "evil man," and (2) Richards's text message expressing hope that she would not mess up the wonderful job plaintiff had done caring for the children.[5]  Plaintiff asserts that the trial court's misattributions of these texts to her were intentional and designed to portray her as hostile.  But, as the Michigan Supreme Court has recognized, "trial judges are human and they do make mistakes." *Cain*, 451 Mich at 516.  The trial court's erroneous attributions appear to be clerical mistakes correctible under MCR 2.119(F) or MCR 2.612(A)(1).  These are simply not the type of mistakes made within the judicial proceedings that demonstrate the extrajudicial bias required for disqualification.

Lastly, plaintiff alleges that the trial court's bias was evident in the court's failure to sanction defendant or draw any unfavorable inference from defendant's obtaining an adjournment on the basis of his false allegation that a CPS investigation had been opened against plaintiff.  Our review of the record suggests that a CPS complaint was made regarding mother, and, because defendant had only received that information, it was possible that he was misled or misinformed.  Regardless, plaintiff has identified no court rule or statute requiring the trial court to sanction defendant, see, e.g., MCR 2.625(A)(2) or MCL 600.2591, and the trial court's decision to not impose discretionary sanctions against defendant does not display an extrajudicial source of bias, *In re MKK*, 286 Mich App at 566, or deep-seated favoritism or antagonism that would make fair judgment impossible and overcome the heavy presumption of judicial impartiality, see *Gates*, 256 Mich App at 440.

We conclude that none of plaintiff's arguments overcome the heavy presumption of judicial impartiality or show that the evidence preponderated against the trial court's findings and conclusion under MCL 722.31(4)(b).  Accordingly, the trial court did not abuse its discretion by denying plaintiff's renewed motion for recusal, and we will not disturb the court's findings and conclusion under MCL 722.31(4)(b).

---

[5] Plaintiff failed to raise these misattributions in her motion for reconsideration, but did raise one of the misattributed quotations from Haase to plaintiff in plaintiff's supplemental motion for reconsideration.  Although the trial court denied plaintiff's supplemental motion for reconsideration because the court rules did not allow for filing such a motion, the court nevertheless addressed the misattributed quote, noting that it came "from a screenshot of a text exchange between plaintiff and Ms. Haase, and regards an issue that would have no impact whatsoever on the outcome of the motion for change of domicile, even if the alleged error was corrected."

## D. EXTRAJUDICIAL "FACT-FINDING"

Plaintiff further argues that the trial court engaged in improper extrajudicial fact-finding by independently investigating plaintiff's expert witness through the state bar directory and then used this investigation to exclude the expert's testimony. This claim of error is without merit.

The record shows that during the initial hearing on plaintiff's motion for a change of domicile, plaintiff suggested that her motion could be heard in a day. The trial court scheduled two consecutive mornings and reviewed the language of MCL 722.31 with the parties. Plaintiff asked the court how many witnesses the parties would be limited to presenting at the hearing. Because the court observed that the parties themselves would use one of those mornings, the court opined that it would make sense for them to identify the witnesses they intended to call so that the court could determine their relevancy. Plaintiff repeated her question of how many witnesses the court would allow given the time restraints. The court observed that it did not anticipate that each party could call more than three witnesses and remain in the timeframe allotted. Plaintiff asked for the ability to call two additional witnesses, before changing to "one more [witness], at most." When the court asked plaintiff who her witnesses were, she said "at least one professional and one law enforcement." The court indicated that it would like to know the witnesses' names. Despite the fact that plaintiff opposed adjourning what was the initial hearing date, she said "I don't have that off the top of my head. . . ." After the court narrowed down plaintiff's potential law enforcement witness, the court asked who else plaintiff would call. Again, plaintiff responded: "I don't have the rest of the people off the top of my head, but I do know there's going be an expert witness for sure." The court again asked plaintiff to identify her expert witness and the subject matter of the witnesses' testimony. Plaintiff responded that she thought that she was going to have "at least two expert witnesses." The court explained that while plaintiff could name two experts that did not mean that the experts would be allowed to testify. The court directed the parties to file a witness list, identify a proposed witness by name along with the expected subject matter of their testimony and identify any proposed expert witness "by name, address, and area of expertise." The court further directed that any report offered by an expert had to be provided to it in advance.

Plaintiff later asked whether the court had granted her motion to accept five witnesses from her. The court replied: "No, I did not." The court then advised that it would look at the submitted lists, decide whether it needed to set some limits, and advise the parties accordingly. The court added that it was "not expanding the number of witnesses beyond . . . each of you and three" other witnesses because it did not believe that the hearing could be completed in a timely manner if it left the number of witnesses uncapped.

That same day, the court entered an order consistent with its rulings, instructing the parties to submit written lists of proposed witnesses, including the names of lay witnesses and a description of their anticipated testimony as well as the name, address, and credentials of any expert. The court's order further explained that the trial court reserved "the authority to set

-13-

reasonable limits on the number of witnesses permitted by each party, and issue such other orders as may reasonably be required under MRE 611."[6]

Plaintiff filed her witness list, naming four lay witnesses, including herself, and one expert witness. Plaintiff also filed a motion to exclude two of her identified witnesses from the witness limit along with a supporting brief.

The following day, the court issued subpoenas for two of plaintiff's in-state witnesses, but not her out-of-state lay witness.[7] As for plaintiff's expert witness, the court's order stated:

> A final [s]ubpoena has been requested by plaintiff for a proposed expert witness, identified as Donna King, Ph.D., J.D., of Sorrento, Florida, who she proposes to offer as an expert on coercive control, abuse, post-separation abuse, and impact on custody and best interest factors. MRE 702 states that a witness who is qualified by knowledge, skill, experience, training, or education may testify if the proponent demonstrates to the court that the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."

> Plaintiff has not shown that the proposed expert has specialized knowledge of Michigan custody and best interest factors. The court takes judicial notice[8] that the State Bar of Michigan does not list the proposed expert as a lawyer licensed in Michigan. The court, as the trier of fact, with twenty-three years of experience in Michigan family law matters and twenty years of experience as a trial judge in the Family Division of the 20th Circuit Court, is not persuaded that plaintiff's expert will help the court understand the evidence or to determine a fact in issue, and denies the request to issue a [s]ubpoena or call her as a witness.[9]

---

[6] In pertinent part, MRE 611 provides:

> **(a) Control by the Court; Purposes.** The court must exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

> (1) Make those procedures effective for determining the truth;

> (2) Avoid wasting time; and

> (3) Protect witnesses from harassment or undue embarrassment.

[7] The out-of-state witness later appeared and testified during the hearing.

[8] The State Bar of Michigan's Member Directory contains the names of lawyers licensed to practice law in Michigan. Thus, under MRE 201, the trial court properly took judicial notice that King was not an attorney licensed to practice in this state.

[9] Plaintiff then filed a motion to substitute a witness for King and modify her witness list. Even so, plaintiff argued that she wished to preserve her challenge to the court's exclusion of her expert

Again, the challenged conduct did not occur in the type of situation that this Court has identified as risking the appearance of impropriety. See *Gates*, 256 Mich App at 441. The challenged conduct was not barred by Canon 3(A)(4) of the Code of Judicial Conduct, which prohibits communications between a judge and a party to a legal proceeding outside the presence of opposing counsel. And the challenged conduct was not an instance of impermissible fact-finding. In sum, plaintiff has not established that the trial court engaged in any type of impermissible conduct or extrajudicial fact-finding.

## E. REMAINING CLAIMS OF ERROR

Plaintiff asserts that the trial court clearly erred, as well as violated Michigan's public policy, by treating her successful completion of mental-health treatment as a negative factor. Plaintiff has not identified any record statements or actions by the trial court that reveal the court's

---

and asked the court to reconsider because its decision "was overly broad and may have inadvertently misapplied the *Daubert* [*v Merrell Dow Pharms, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993),] standard."

But MRE 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Considering the trial court's extensive family law experience, familiarity with the facts of this case and these parties, and its knowledge of the controlling legal standards applicable when deciding a motion to change domicile, its conclusion that plaintiff's proposed expert's testimony would not be helpful to it was within the range of principled outcomes. See and compare *People v Marshall*, 298 Mich App 607, 619; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020; 829 NW2d 876 (2013) (The trial court did not abuse its discretion by excluding a criminal defendant from presenting an attorney as an expert witness during a hearing on the defendant's ineffective-assistance-of-counsel claim when the court determined that such testimony would not be helpful given its knowledge of the controlling legal standards.) Indeed, nothing in the trial court's order prevented plaintiff herself from testifying about "coercive control, abuse, post-separation abuse, and [their] impact on custody and best interest factors." And plaintiff testified during the hearing and called four other witnesses. As the trial court suspected, the second half-day hearing ran over its allotted time and the court had to schedule an additional hearing date to complete.

position regarding plaintiff's mental-health treatment or that support plaintiff's assertion that the court viewed her treatment negatively. Moreover, plaintiff's insinuation that the trial court's denial of her motion to change domicile penalized her for seeking care ignores that the trial court denied her motion because she failed to meet her evidentiary burden to show that MCL 722.31(4) supported the proposed relocation. When a party fails to dispute the actual basis of the trial court's ruling, this Court need not consider granting relief. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Lastly, plaintiff asserts that she is entitled to relief on the basis of cumulative error. She is not.

"Cumulative error only warrants reversal when several errors combine to undermine confidence in the reliability of a verdict." *In re JCB*, 336 Mich App 736, 754; 971 NW2d 705 (2021). Plaintiff has identified mistakes that the trial court made when attributing to her text messages written by others. As already discussed, plaintiff has not established that these misattributions entitle her to relief. On this record, it cannot be said that the trial court's misattributions violated plaintiff's due-process rights or undermined the confidence in the reliability of the court's conclusion that plaintiff did not meet her burden to establish that the factors under MCL 722.31(4) supported her motion to change domicile. See *id*. Therefore, plaintiff is not entitled to relief on the basis of her claim of cumulative error.

## III. CONCLUSION

We conclude that the trial court's finding that plaintiff did not meet her burden to establish that the factors in MCL 722.31(4) supported the proposed change in domicile was not against the great weight of the evidence. We also conclude that the trial court did not abuse its discretion by denying plaintiff's motion in limine and that plaintiff has abandoned any challenges to the trial court's actual evidentiary rulings. We further conclude that plaintiff has not overcome the heavy presumption of judicial impartiality, that the trial court did not engage in impermissible extrajudicial "fact-finding," and that plaintiff has not established that she is entitled to relief on the basis of allegations about the trial court's view of her mental-health treatment or on the basis of the cumulative-error doctrine.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

-16-